Mark W. Lapham, Esq. (SBN 146352)
Law Office of Mark W. Lapham
751 Diablo Rd.
Danville, CA 94526
Tel: (925) 837-9007
Fax: (925) 406-1616

Attorney for Plaintiff,
KARTHIK SUBRAMANI

# UNITED STATES DISTRICT COURT

## FOR NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KARTHIK SUBRAMANI, | Case No.: 13-cv1605 SC |
| Plaintiff, | **SECOND AMENDED VERIFIED COMPLAINT FOR DAMAGES:** |
| v. | |
| WELLS FARGO BANK, N.A.; FIDELITY NATIONAL TITLE COMPANY; and DOES 1 through 100, inclusive, | **(1) WRONGFUL FORECLOSURE;**<br>**(2) CONTRUCTIVE FRAUD;**<br>**(3) CANCELLATION OF FRAUDULENT INSTRUMENTS;**<br>**(4) UNJUST ENRICHMENT;**<br>**(5) VIOLATION OF THE TRUTH-IN-LENDING ACT 15 U.S.C 1601** *et seq.*; **and** |
| Defendant(s). | **(6) VIOLATION OF BUSINESS AND PROFESSION CODE§ 17200,** *et seq.* |
| | **DEMAND FOR TRIAL BY JURY** |

Pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), COMES NOW, KARTHIK SUBRAMANI, hereinafter "Plaintiff," sue WELLS FARGO BANK, N.A. and FIDELITY NATIONAL TITLE COMPANY and Does 1 through 100, inclusive, hereinafter referred to as "Defendants," for wrongful foreclosure, for Fraud, for violation of California Civil Code § 2932.5, for violation of the California Business & Professions Code, §17200 *et seq* and for Unjust Enrichment. Plaintiff also seek to enjoin Defendants to reverse and undo the fraudulent sale of the Subject Property to a third party purchaser, and restitution for mortgage payments and fees and costs improperly collected by Defendants from Plaintiff.

1

1.   At issue is right to title and ownership of the property commonly known as 6060 Autumn Leaf Common, Livermore, California 94551 (hereinafter the "Subject Property"). Plaintiff is and was at all times material hereto a resident of the County of Alameda, State of California, and is the sole lawful owner of the Subject Property of this action.

2.   Plaintiff alleges that, as a result of the failure of Defendants to properly and lawfully ensure that the chain of title of Plaintiffs' homestead, the Subject Property was not broken, Defendants, jointly and/or severally, failed to timely file and record assignments and other real estate documents in a manner that complies with applicable California law. Defendants jointly and/or severally, then created and caused to be recorded in the County Recorder's Office, documents bearing fraudulent signatures (robo-signed) in an attempt to cure these fatal defects, which resulted in the worldwide economic crisis.

3.   Mortgage-backed securities are created through a complex process known as "securization." (See Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13 ["a mortgage securitization transaction is extremely complex"].) In simplified terms, "securitization" is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans. (Oppenheim & Trask-Rahn, *Deconstructing the Black Magic of Securitized Trusts: How the Mortgage-Backed Securitization Process is Hurting the Banking Industry's Ability to Foreclose and Proving the Best Offense for a Foreclosure Defense* (2012) 41 Stetson L.Rev. 745, 753-754 (hereinafter, *Deconstructing Securitized Trusts*).) The securities issued by the trust are "mortgage-backed."

4.   In addition to the egregious breaches of agreements governing the mortgage-backed securities (MBS) trust to which Plaintiff KARTHIK SUBRAMANI's mortgage loan was transferred/sold/placed or otherwise wrongfully and/or unlawfully transferred into after Plaintiff's loan closing on or about October 2006. Defendants failed to follow California law in assigning, transferring and recording real estate documents in a manner that is compliant with California laws, resulted in Defendants forfeiture of any interest in the Subject Property. No Defendant is a true beneficiary or real party in interest under California law. No Defendant is the lawful beneficiary of

2

the Deed of Trust which acts as a security interest in the Subject Property. Plaintiff properly alleges herein, as a result of the Defendants' bad faith acts, no Defendant had the power to enforce the note or exercise the power of sale under the Deed of Trust. Transfer of real estate in California cannot be based upon fraud. Plaintiff properly alleges Defendants either jointly or severally engaged in acts that violate state and federal laws in the fraudulent and defective transfer of Plaintiff's mortgage.

5. The mortgage for the Subject Property was irrevocably sold by original lender WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") and contributed to a mortgage-backed securities trust ("MBS trust") but the required intervening assignment of the Plaintiff's Deed of Trust ("DOT") and endorsement Promissory Note ("Note") pursuant to the governing securitization agreement never happened on or before the trust's "Closing Date" on October 24, 2006. The subject MBS trust, with an election and continuing qualification as real estate mortgage conduits (REMICs) pursuant to the Internal Revenue Service Tax Code of 1986 (the "Tax Code"), is identified as the WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR18 TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR18 (hereinafter the "WFMBS 2006-AR18 TRUST") for which HSBC BANK USA, NATIONAL ASSOCIATION (hereinafter "HSBC"), serves as trustee. As the prescribed rules and REMIC provisions governing the trust agreement were violated, the securitization of the subject loan failed thereby leaving HSBC, as Trustee for the benefit of the Certificateholders of the REMIC MBS Trust: WFMBS 2006-AR18 TRUST, without any legal or equitable interest in the mortgage loan. Such botched securitization resulted to an irreversible break in the chain of title − with the beneficiary and real party in interest in the mortgage loan undocumented and therefore unknown. The resulting cloud on Plaintiff's title to the Subject Property, created by Defendants nullified Defendants' interest in the Subject Property. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see Levitin & Twomey, *Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].)

6. As such, Defendant WELLS FARGO had no lawful authority to direct Defendant

3

FIDELITY NATIONAL TITLE COMPANY (hereinafter "FNTC"), to effect a wrongful foreclosure. Defendants filed a fraudulent, and forged and therefore invalid substitute trustee in the Deed of Trust ("DOT"), to foreclose on the mortgage loan and illegally sell Plaintiff's home property, which is the subject of this action. Further, Plaintiff has been willfully and fraudulently induced to pay mortgage payments to WELLS FARGO, a loan servicing party without right and authority to collect them because of egregious breaches of the governing securitization agreement. Consequently, Plaintiff seeks the Court's intervention to invalidate the foreclosure and to quiet title in Plaintiff's name and to disgorge the ill-gotten gains obtained by WELLS FARGO at Plaintiff's expense.

A. **PARTIES AND JURISDICTION**

1.    Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, claim an interest in Plaintiff's property adverse to Plaintiff herein. Plaintiff is and was at all times material hereto a resident of the County of Alameda, State of California, and the owner of the subject property of this action, which is located at 6060 Autumn Leaf Common, Livermore, California 94551, referred to herein as the Subject Property.

2.    Defendants' unlawfully foreclosed upon the Subject Property without any basis in law or in equity, and said Defendants have no legal or equitable right, claim, or interest in said property by virtue of the fact that none of them own or owned, or is or was, a holder in due course of the Note while simultaneously being the beneficiary of the DOT. Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff's alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.  This suit also seeks to enjoin, cancel and reverse the foreclosure sale of Plaintiff's unique property.  Defendants have initiated and completed a non-judicial foreclosure proceeding against Plaintiff's home property that is not in compliance with laws of California. Plaintiff's property was sold by Defendant FNTC without legal authority in a Trustee's Sale on August 9, 2012 to a third party, CALIFORNIA EQUITY MANAGEMENT GROUP, INC.; and subsequently transferred the title of the Property to said purchaser by issuing a

4

Trustee's Deed Upon Sale ("TDUS") on August 15, 2012 and recording it on August 23, 2012 in the public records of the Alameda County Recorder. Recording documents known to be fraudulent, as Plaintiff alleges Defendants have herein, are in violation of state, federal and California penal codes.

3. Defendant WELLS FARGO BANK, N.A. ("WELLS FARGO") is a national banking association, and its articles of association designate Sioux Fall, South Dakota as the location of its main office. The loan transaction on October 18, 2006 (the "Original Loan Transaction") was between the Plaintiff KARTHIK SUBRAMANI and WELLS FARGO, the original lender in the Note and DOT. WELLS FARGO has a long history of lawsuits resulting from the bad faith acts as Plaintiff properly alleges herein.

4. FIDELITY NATIONAL TITLE INSURANCE COMPANY (hereinafter "FNTIC"), a Nebraska Corporation, was the original Trustee in the DOT. It should be noted that Defendant FIDELITY NATIONAL TITLE COMPANY ("FNTC"), doing business in California and is listed with the California Secretary of State with an active registration as Entity No. C0797285, is NOT the same business entity as FIDELITY NATIONAL TITLE INSURANCE COMPANY ("FNTIC"), the original Trustee in the DOT. FNTIC, with its corporate office at 17911 Von Karman, Suite 200, Irvine, CA 92614, is listed with the California Secretary of State with a different active registration under Entity No. C1997801.

5. A third party forensic mortgage securitization audit uncovered and accurately verified that the Plaintiff's mortgage loan was in fact irrevocably sold immediately after loan origination in a securitization transaction by original lender WELLS FARGO to WELLS FARGO ASSET SECURITIES CORPORATION (hereinafter "WFASC"). This was the first sale of the Plaintiff's mortgage loan. Thereafter, securitization Depositor WFASC bundled Plaintiff's mortgage loan (consisting of the original mortgage Note and Deed of Trust) with other mortgages in a pool and irrevocably sold and securitized it into the mortgage-backed securities trust (MBS trust): WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR18 TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR18 (hereinafter the "WFMBS 2006-AR18 TRUST") on or before the REMIC trust's "Closing Date" (also referred to as the REMIC "Start up Day") on October 24, 2006. This was the second sale of the Plaintiff's mortgage loan. The WFMBS

2006-AR18 TRUST is a *special purpose vehicle* ("SPV") formed as a REMIC MBS Trust as defined under the Tax Code. This REMIC Trust serves as a tax-exempt vehicle at the trust level for the benefit of bond investors (the "Certificateholders"). As such and pursuant to the terms and REMIC provisions of the governing securitization agreement (often referred to as the *Pooling and Servicing Agreement*) which created the REMIC Trust, the Trustee for the WFMBS 2006-AR18 TRUST is prohibited to buy or accept assets (in this case, Mortgage Loan asset) into its Trust Fund after the Closing Date and REMIC Start up Day on October 24, 2006. The securitization agreement, which is in accordance with the Tax Code, refers to such restriction as "*Prohibited Transaction.*"

6.   Pursuant to the binding terms and REMIC provisions of the governing securitization agreement, WELLS FARGO was paid in the transaction (at the first sale) for the full balance of Plaintiff's mortgage loan.  Therefore, WELLS FARGO no longer has any ownership and beneficial interest in the loan after October 24, 2006. Simply said, original lender WELLS FARGO was no longer the mortgagee and beneficiary in the Plaintiff's mortgage loan that had already been long sold by WELLS FARGO.

7.   Defendant FIDELITY NATIONAL TITLE COMPANY ("FNTC") is a Corporation with its place of business at 135 Main Street, Suite 1900, San Francisco, California 94105.  FNTC schedules and conducts trustee's (foreclosure) sales of real property. At all times material hereto, FNTC was not the original trustee or a party to the original transaction. FNTC represents itself here as the purported "duly appointed Trustee" under the Plaintiff's DOT based on an invalid Substitution of Trustee ("SOT") issued by WELLS FARGO on August 25, 2009. Plaintiff is informed and believes and thereon alleges that WELLS FARGO is neither the lender in the Note nor the valid beneficiary under the Deed of Trust. WELLS FARGO is also not an authorized agent of the "undocumented" and "unknown" true beneficiary and real party in interest in the Plaintiff's mortgage loan. Therefore, WELLS FARGO does not have the right and authority to substitute the trustee in Plaintiff's DOT.

8.   Plaintiff does not know the true names and capacities of Defendants sued herein under fictitious names Does 1-100, inclusive.  When those entities are made known to Plaintiff will seek leave of court to amend the Complaint to add the true names and capacities of Doe Defendants.

6

Plaintiff is informed and believes and thereon alleges that each of said fictitiously named Defendants is responsible in some manner for the acts complained of herein.

**B.** **PROCEDURAL HISTORY**

9. Plaintiff KARTHIK SUBRAMANI joined multiple Plaintiffs, who are represented by the UNITED FORECLOSURE ATTORNEY NETWORK (hereinafter "UFAN") of Roseville, California, filing a Civil Complaint against the WELLS FARGO BANK, N.A. et al. in the Superior Court of California, Superior Court of CA, County of Sacramento on September 1, 2011 under Case No. 34-2011-00110146 (Linda Roberts, et al. v. Wells Fargo Bank, N.A., et al.). Plaintiff, individually, also filed and recorded on September 12, 2011 a *lis pendens* pursuant to CCP § 405.20. In late January 2013, Plaintiff was advised by Kristine L, Crone, UFAN's lead attorney representing the multiple Plaintiffs in the case, that UFAN was forced to file Chapter 11 Bankruptcy in December 2012 and that it soon plans to convert the bankruptcy to Chapter 7 dissolution. Plaintiff was further advised to retain a new counsel. Instead of continuing to be part of litigation among the multiple Plaintiffs in said pending case, Plaintiff herein, individually, will voluntarily withdraw from such action, and thus, retained this attorney for legal representation filing this Complaint.

**C.** **MATERIAL FACTS COMMON TO ALL COUNTS**

10. On or about October 18, 2006, Plaintiff entered into a residential mortgage loan transaction (the "Original Loan Transaction") with WELLS FARGO BANK, N.A. ("WELLS FARGO"). Plaintiff's mortgage loan consisted of a Promissory Note ("Note") and a Deed of Trust ("DOT") securing the property. The DOT was recorded as Instrument No. 2006-400370 on October 26, 2006 in the official records of the Alameda County Recorder. A true and correct copy of the "**DOT**," is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

11. Defendants' claim that Plaintiff defaulted on his mortgage in 2009 Plaintiff denies this allegation. Defendants' First NOD had defects that will have to be clarified either through discovery or at trial, but at no time does Plaintiff imply that the First NOD (Ex. D) is a valid document which accurately reflects the status of Plaintiff's mortgage note. Defendants do not offer evidence of some sort of loan modification that is in default. As has become evident in this mortgage crisis, banks like

Wells Fargo file Notice of Default with no evidence of a loan, to which Plaintiff has any obligation being the subject of that Default. Plaintiff denies that the first NOD is a valid default. Defendants offer no reasoning why the First NOD rescinded, it cannot be assumed Plaintiff was in default.

12. Defendants claim that Plaintiff defaulted on his mortgage in 2011. Again, Plaintiff is not alleging that Defendants claims of default are valid or accurate. However, Plaintiff is informed and believes and thereon alleges that the subject loan was then paid off in full by the insurance policy specifically covering defaulted loan in the securitization trust. Despite that the loan was paid in full, and the fact that not one of the Defendants herein is the owner of the Note or the beneficiary in the DOT encumbering Plaintiff's Property, Defendants WELLS FARGO and FNTC foreclosed Plaintiff's Property illegally and sold it without right and authority to CALIFORNIA EQUITY MANAGEMENT GROUP, INC. To the extent the documents are proven to be fraudulent any sale based upon fraudulent and defective documents are VOID not VOIDABLE under current California law. Because these Defendants have a known history of consumer deception, it cannot be assumed that this Second Notice of Default is a valid, legal an binding document. Should the First Notice of Default be deemed void, it will go without saying that documents created as a result of defects in the original document are equally VOID not VOIDABLE. Plaintiff was not in default under the second Notice of Default, and Defendants offer not undisputable evidence to the contrary. It cannot be assumed Plaintiff had any obligation to act on documents that are defective and void, as Plaintiff properly alleges herein.

13. Plaintiff has never been provided with any evidence that the full and unencumbered interest in the actual mortgage loan (either the Note or the DOT) was ever transferred from original lender WELLS FARGO, or to any person or entity. Also, Plaintiff was not notified by the Defendants that the loan had been paid in full. Conditions precedent of the deed of trust were not met by the Defendants.

14. On information and belief, shortly after loan closing (the "Original Loan Transaction"), WELLS FARGO, acting as the mortgage securitization "Sponsor" and "Seller," irrevocably sold the Plaintiff's mortgage loan (consisting of the Note & DOT) to "Depositor" WELLS FARGO ASSET SECURITIES CORPORATION (hereinafter "WFASC"). WELLS FARGO was paid in full for the

balance of the Plaintiff's mortgage loan in the verified securitization transaction. Immediately thereafter, securitization Depositor WFASC in turn irrevocably sold and securitized the subject loan, with other mortgages bundled in a pool, into a special purpose vehicle (SPV) formed as mortgage-backed securities trust ("MBS trust") and identified as the WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR18 TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR18 (hereinafter the "WFMBS 2006-AR18 TRUST") on or before the trust's "Closing Date" on October 24, 2006 (also the REMIC "Start up Date.") Pursuant to the precise terms of the binding and governing securitization agreement, Depositor WFASC was also paid for the full balance of each of the pooled Mortgage Loans with the securities certificates (the "Certificates") issued by the MBS Trust, which were then sold by securitization Underwriter UBS INVESTMENT BANK on behalf of Depositor WFASC to multiple investors ("Bond Investors," also called the "Certificateholders.") Essentially, the Certificateholders of the WFMBS 2006-AR18 TRUST provided the funding for this REMIC MBS Trust's Mortgage Loans purchase.

15. Plaintiff is informed and believes and thereon alleges that such sale and transfer of his mortgage loan to the securitization trust did not conform to California law where the transfer of a negotiable instrument (Note) to a new buyer (or buyers) for value must be properly indorsed and the security instrument for such Note (a notarized assignment of the DOT) must be contemporaneously assigned to each new owner by recording with the appropriate country recorder's office. Plaintiff is informed and believes and thereon alleges that when WELLS FARGO sold the mortgage loan to Depositor WFASC, and then from this securitization Depositor to the Trustee for the benefit of the Certificateholders (Investors) of the WFMBS 2006-AR18 TRUST, without the intervening mortgage (DOT) assignment and indorsement of the underlying original mortgage Note, Plaintiff's DOT became a nullity and void.

16. The REMIC MBS Trust: WFMBS 2006-AR18 TRUST was established on October 1, 2006 with the execution of a *Pooling and Servicing Agreement* ("PSA"). The WFMBS 2006-AR18 TRUST has an election and continuing qualification to be treated as REMIC pursuant Tax Code. HSBC USA NATIONAL ASSOCIATION ("HSBC") was named "Trustee" for the benefit of the Certificateholders of the WFMBS 2006-AR18 TRUST; and WELLS FARGO as the "Master

Servicer" and "Servicer." The PSA, which is the binding and governing securitization agreement that created the WFMBS 2006-AR18 TRUST, provides for the trust administration through the Trustee and Master Servicer; and it is the instrument defining the rights of its security holders (certificateholders) and the ownership of the securitized mortgage loans (i.e., the collectively the Trust Asset in the Trust Fund.) HSBC, as Trustee is the fiduciary and nominal owner of the trust assets for the benefit of the investors (Certificateholders). The REMIC MBS Trust transfers the right to service the collection of income from the pooled assets to a third party servicer or in most cases to the loan originator itself (if it also the securitization sponsor as in this instant case.) The Servicer collects borrower's obligations on the loans subsequent to the securitization closing date on behalf of the trustee for the benefit of the certificateholders. Loan servicing rights confers "no ownership rights" in the mortgage note and deed of trust.

17. When the Plaintiff's mortgage loan was sold and securitized, FIDELITY NATIONAL TITLE NATIONAL INSURANCE COMPANY, the originally Trustee in the DOT and who has not been legally substituted out as the Trustee, was no longer named in any capacity in the Plaintiff's DOT under the governing PSA. The acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see Levitin & Twomey, *Mortgage Servicing, supra*, 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].)

**D.    WRONGFUL  FORECLOSURE BY FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**

18.   On July 23, 2009, FIRST AMERICAN TITLE INSURANCE COMPANY, acting as agent for FIRST AMERICAN LOANSTAR TRUSTEE SERVICES (hereinafter "FIRST AMERICAN LOANSTAR"), as purported "Agent for the Current Beneficiary," issued and caused the recording on June 27, 2009 of a **Notice of Default and Election to Sell under the Deed of Trust** (hereinafter the "**1ˢᵗ NOD**") in the public records of the Alameda County Recorder as Instrument No. 2009-239887. A true and correct copy of the "**1ˢᵗ NOD**" is attached hereto as **Exhibit "B"** and incorporated here`in by reference as though fully set forth.

19. While this 1st NOD recites as a matter of historical record only that WELLS FARGO was the original Beneficiary in the security instrument when such DOT was recorded on October 26, 2006 (i.e., over 2 years earlier from issuance of the NOD), nowhere in the NOD did FIRST AMERICAN LOANSTAR specifically state whether WELLS FARGO is still the "present beneficiary" under the DOT. FIRST AMERICAN LOANSTAR did not and could not state so because original lender WELLS FARGO was no longer the beneficiary in the DOT after the loan was irrevocably sold by WELLS FARGO and securitized in October 2006; it only states in the NOD that FIRST AMERICAN LOANSTAR is acting as trustee for the "Current Beneficiary" without specifically naming who in fact is the current beneficiary in the DOT.

20. It further states in the NOD, "to find out amount you must pay, or to arrange for payment to stop foreclosure, or if your property is in foreclosure for any reason contact: WELLS FARGO HOME MORTGAGE c/o FIRST AMERICAN LOANSTAR TRUSTEE SERVICES." Such statement only suggests, but without specifically stating, that WELLS FARGO (or its wholly owned servicing company WELLS FARGO HOME MORTGAGE) is the "current beneficiary" in the mortgage. Original lender WELLS FARGO is no longer the present beneficiary under the DOT because WELLS FARGO had long sold the mortgage loan in the securitization transaction over 2 years earlier in October 2006.

21. The NOD is also invalid because it was not issued either by a valid substitute Trustee, or by an authorized agent of the "undocumented" and "unknown" present Beneficiary in the DOT. To emphasize again, the subject mortgage loan was long sold years over 2 years earlier (in October 2006) and original Lender WELLS FARGO was paid in full for selling the Plaintiff's loan bundled with other mortgages in a pool. That verified securitization transaction, which was sponsored by WELLS FARGO as mortgage loan "Seller," and with WFASC as securitization "Depositor," was funded by multiple investors who purchased the securities "Certificates" issued by the securitization trust. The Certificates issued by the REMIC MBS Trust are backed by the pooled Mortgage Loans in the Trust Fund.

22. WELLS FARGO'S ownership and beneficial interest in and to Plaintiff's mortgage loan was effectively extinguished after this original lender sold and securitized the loan in October 2006,

notwithstanding the fact that WELLS FARGO failed to legally assign the DOT and validly endorse the underlying original mortgage note to the purchaser of the loan, WFASC, on or before the REMIC MBS Trust's "Closing Date" on October 24, 2006, Thus, securitization Depositor WFASC, <u>could not</u> and <u>did not</u> legally transfer and assign Plaintiff's mortgage loan to HSBC, as Trustee for the WFMBS 2006-AR18 TRUST. Such failure caused the Plaintiff's DOT to be separated from the Note, resulting to an irreversible broken chain of title because one could not go back in time (to the Trust's "Closing Date" on October 24, 2006). Therefore, WELLS FARGO cannot be the "current beneficiary" under the DOT. The present Beneficiary (and real party in interest) in the subject mortgage loan is <u>undocumented</u> and remains <u>unknown</u> to date. FIRST AMERICAN LOANSTAR here, claiming to be the "Agent of the [un-named] Current Beneficiary," is a stranger and not party in the mortgage loan; it was also not a party to the original loan transaction, the securitization agreement or the authorized agent of the "unknown" present beneficiary in the DOT.

23. FIRST AMERICAN LOANSTAR had no power and authority to issue the NOD; and the NOD is void and of no legal force and effect. Section 2924(a)(1)(C) of the non-judicial foreclosure statute requires a written Declaration of Default/Demand for Sale and a statement in the NOD setting forth the nature of each breach actually known to the beneficiary. Here, FIRST AMERICAN LOANSTAR did not provide the name of the present beneficiary and information required in the NOD. Any information provided in the NOD Declaration of Compliance dated July 20, 2009, which was attached to the NOD and must be pursuant to Cal. Civ. Code § 2923.5, was by WELLS FARGO HOME MORTGAGE (hereinafter "WFHM"), acting only as the loan "Sub-Servicer" for WELLS FARGO BANK, N.A. ("WELLS FARGO"), the "Master Servicer" for the REMIC MBS Trust. WELLS FARGO (or WFHM representing itself in the NOD Declaration as the mortgagee, beneficiary or authorized agent of the Beneficiary) is without any standing in the mortgage loan, and not the Beneficiary in the DOT. As Master Servicer and Sub-Servicer for the securitization trust, WFN and WFHM, respectively, are only authorized to foreclose the Plaintiff's mortgage loan on behalf of the Trustee of the REMIC MBS Trust. However, because HSBC as Trustee for the WFMBS 2006-AR18 TRUST never received the complete and required intervening assignment of the DOT and endorsement of Plaintiff's mortgage note on or before its Closing Date

Karthik Subramani v. Wells Fargo Bank, N.A., et al.                    Verified Second Amended Complaint

on October 24, 2006, said REMIC MBS Trust does not have any ownership and beneficial interest in Plaintiff's mortgage loan; and its Trustee, HSBC, does not have the right and power to authorize WELLS FARGO (or its Sub-Servicer WFHM) to act as loan servicer in the Plaintiff's mortgage loan on behalf of the WFMBS 2006-AR18 TRUST. This is yet another violation of the non-judicial foreclosure statute. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the statute's provisions is required. _Miller v. Cote_ (1982) 127 Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient notice of default is invalid.)

24. On August 25, 2009, FIRST AMERICAN LOANSTAR, acting as attorney in fact for WELLS FARGO, who is not the lender, note holder or authorized agent of the undocumented and unknown lender and beneficiary in Plaintiff's DOT, issued and caused the recording on August 28, 2009 of a **Substitution of Trustee** (hereinafter the "**1st SOT**") in the official records of the Alameda County Recorder as Instrument No. 2012-0152032-00. This 1st SOT purports to appoint FIRST AMERICAN LOANSTAR. FIRST AMERICAN LOANSTAR, as issuer in the SOT instrument for WELLS FARGO, was in effect representing both sides of the transaction, as assignor and assignee; meaning FIRST AMERICAN LOANSTAR was also designating itself as the substitute trustee in the DOT. A true and correct copy of the "**1st SOT**" is attached hereto as **Exhibit "C"** and incorporated herein by reference as though fully set forth.

25. Pursuant to _Covenant No. 24_ of the Deed of Trust, only the lender (in this case the "undocumented" and "unknown" successor beneficiary and note holder and/or its duly authorized agent) has the power and authority to appoint a successor Trustee under the DOT. Specifically, _Covenant No. 24_ in the DOT states:

> "**Substitute Trustee**. _Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor Trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution._" [Underline added]

13

Therefore, such SOT instrument executed by FIRST AMERICAN LOANSTAR, as attorney in fact WELLS FARGO–who is no longer the valid lender in the DOT, or even the agent of the "undocumented" and "unknown" successor beneficiary) purporting to appoint FIRST AMERICAN LOANSTAR as substitute Trustee is not valid − without legal effect and force; it is not just voidable, but entirely void.

26. The Plaintiff cured its alleged loan default. On August 31, 2010, FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS f.k.a. FIRST LOANSTAR TRUSTEE SERVICES LLC, as "Agent for the Beneficiary," issued and caused the recording on September 10, 2010 of a **Notice of Rescission of Declaration of Default and Demand for Sale and Notice of Breach and Election to Cause Sale** (hereinafter the "**Rescission of 1st NOD**") in the official records of the Alameda County Recorder as Instrument No. 2010-263000. A true and correct copy of the "**Rescission of 1st NOD**" is attached hereto as **Exhibit "D"** and incorporated herein by reference as though fully set forth.

**E.      WRONGFUL FORECLOSURE BY FIDELITY NATIONAL TITLE COMPANY ("FNTC")**

27. On May 4, 2011, LSI TITLE COMPANY, acting as agent for FIDELITY NATIONAL TITLE COMPANY ("FNTC"), as purported "Trustee" in Plaintiff's DOT, issued and caused the recording on May 10, 2011 of a new **Notice of Default and Election to Sell under the Deed of Trust** (hereinafter the "**2nd NOD**") in the public records of the Alameda County Recorder as Instrument No. 2011-141475. It should be noted that at issue date of this 2nd NOD, FNTC has not been substituted to original trustee FNTIC in the NOD. A true and correct copy of the "**2nd NOD**" is attached hereto as **Exhibit "E"** and incorporated herein by reference as though fully set forth.

28. While this 2nd NOD (as in the 1st NOD that was rescinded in 2010) recites <u>as a matter of historical record only</u> that WELLS FARGO was the original Beneficiary in the security instrument when such DOT was recorded on October 26, 2006 (i.e., over 4 years earlier now from issuance of this 2nd NOD), nowhere in this NOD did FNTC specifically state whether WELLS FARGO is still the "present beneficiary" under the DOT. FNTC did not and could not state so because original lender WELLS FARGO was no longer the beneficiary in the DOT after the loan

was irrevocably sold by WELLS FARGO and securitized in October 2006; it only states in the NOD that FNTC is acting as trustee for the "present beneficiary" <u>without specifically naming who in fact is the current beneficiary in the DOT</u>.

29. It further states in the 2nd NOD, "to find out amount you must pay, or to arrange for payment to stop foreclosure, or if your property is in foreclosure for any reason contact: WELLS FARGO BANK, N.A. c/o DEFAULT RESOLUTION NETWORK." Such statement only suggests, <u>but without specifically stating</u>, that WELLS FARGO is the "present beneficiary" in the mortgage. As cited hereinbefore, original lender WELLS FARGO is no longer the present beneficiary under the DOT because WELLS FARGO had long sold the mortgage loan in the securitization transaction over 4 years earlier in October 2006.

30. This 2nd NOD (as in the 1st NOD) is also invalid because it was not issued either by a valid Trustee or substitute Trustee, or by an authorized agent of the "undocumented" and "unknown" present Beneficiary in the DOT. Emphasizing again the subject mortgage loan was long sold years over 4 years earlier (in October 2006) and original Lender WELLS FARGO was paid in full for selling the Plaintiff's loan bundled with other mortgages in a pool. That verified securitization transaction, which was sponsored by WELLS FARGO as mortgage loan "Seller," and with WFASC as securitization "Depositor," was funded by multiple investors who purchased the securities "Certificates" issued by the securitization trust. The Certificates issued by the REMIC MBS Trust are backed by the pooled Mortgage Loans in the Trust Fund.

31. WELLS FARGO's ownership and beneficial interest in and to Plaintiff's mortgage loan was effectively terminated after this original lender sold and securitized the loan in October 2006, notwithstanding the fact that WELLS FARGO did not legally assign the DOT and did not validly endorse the underlying original mortgage note to the purchaser of the loan, WFASC, on or before the REMIC MBS Trust's "Closing Date" on October 24, 2006, Thus, securitization Depositor WFASC, <u>could not</u> and <u>did not</u> legally transfer and assign Plaintiff's mortgage loan to HSBC, as Trustee for the WFMBS 2006-AR18 TRUST. Such failure caused the Plaintiff's DOT to be separated from the Note, resulting to an irreversible broken chain of title because one could not go back in time (to the Trust's "Closing Date" on October 24, 2006). Therefore, WELLS FARGO <u>is</u>

not and cannot be the "current beneficiary" under the DOT. The present beneficiary (and real party in interest) in the subject mortgage loan is <u>undocumented</u> and remains <u>unknown</u> to date. FNTC here, invalidly claiming to be the "Trustee" in the DOT, is a stranger and not party in the mortgage loan; it was also not a party to the original loan transaction, the securitization agreement or the authorized agent of the "unknown" present beneficiary in the DOT.

32. On May 6, 2011, WELLS FARGO, who is no longer the lender, note holder or authorized agent of the undocumented and unknown lender and beneficiary in Plaintiff's DOT, issued and caused the recording on August 11, 2011 of a **Substitution of Trustee** (hereinafter the "**2nd SOT**") purporting to appoint FIDELITY NATIONAL TITLE COMPANY ("FNTC") as substitute trustee in the DOT in place of original trustee FIDELITY NATIONAL TITLE INSURANCE COMPANY ("FNTIC"). This 2nd SOT was recorded more than 3 months later on August 11, 2011 in the official records of the Alameda County Recorder as Instrument No. 2011-231057. It was therefore indisputable that in addition to the reasons cited hereinbefore that the 2nd NOD was invalid, FNTC was already prematurely claiming to be the purported "Trustee" in the DOT when it issued the 2nd NOD on May 4, 2011 (Complaint Exhibit "E"). A true and correct copy of the "**2nd SOT**" is attached hereto as **Exhibit "F"** and incorporated herein by reference as though fully set forth.

33. As in the 1st SOT issued on August 25, 2009 (Complaint Exhibit "C"), this 2nd SOT issued by WELLS FARGO (who is no longer the mortgagee, beneficiary and real party in interest in the DOT) is also invalid and fraudulent. Covenant No. 24 of the DOT specifically provides that only the lender (in this case the "undocumented" and "unknown" successor beneficiary and note holder and/or its duly authorized agent) has the power and authority to appoint a successor Trustee under the DOT. WELLS FARGO is no longer the mortgagee, beneficiary and real party in interest in the DOT when it issued this 2nd SOT.

34. On August 11, 2011, Defendant FNTC, acting as purported "duly appointed Trustee" in the DOT, issued and caused the recording of a **Notice of Trustee's Sale** (hereinafter the "**NOTS**") in the public records of the county recorder as Instrument No. 2011-231058. A true and correct copy of the "**NOTS**" is attached hereto as **Exhibit "G"** and incorporated herein by reference as though

fully set forth.

35. As in the 1st and 2nd NOD (Complaint Exhibits "B" and "E"), Plaintiff challenges and disputes the validity of the NOTS, and FNTC's [lack of] authority to issue the NOTS. FNTC's alleged authority in the DOT was derived from the invalid and fraudulent SOT instrument issued by WELLS FARGO who as cited has no legal standing and beneficial interest in the DOT and no longer the lender in the mortgage Note.

36. On August 9, 2012, Defendant FNTC, acting as purported "Trustee" in the DOT, illegally sold Plaintiff's Property in a foreclosure sale to CALIFORNIA EQUITY MANAGEMENT GROUP, INC. and issued on August 15, 2012 a **Trustee's Deed Upon Sale** (hereinafter the "**TDUS**") granting and conveying, but without covenant or warranty, express or implied, the Trust Property to CALIFORNIA EQUITY MANAGEMENT GROUP, INC. The TDUS was recorded on August 23, 2012 in the public records of the Alameda County Recorder as Instrument No. 2012-276865. A true and correct copy of the "**TDUS**" is attached hereto as **Exhibit "H"** and incorporated herein by reference as though fully set forth.

**F.    SECURITIZATION OF THE SUBJECT MORTGAGE LOAN IN OCTOBER 2006**

37. Before securitization, the holder of an enforceable note has a financial responsibility for any losses that may occur arising from a possible default, which means that holder also has the authority to take steps to avoid any such losses (the right to foreclose). Securitization, however, effectively severs such financial responsibility for losses. With securitization the mortgage is converted into something different from what was originally represented to the mortgagor. For one thing, since the party (or parties) taking action to foreclose does not actually hold any legal or equitable interest in any securitized mortgage, they have not realized any loss or damages resulting from the purported default. Therefore, it also follows that the foreclosing party avoids the liability, which could result if a class of certificate holders claimed wrongful injury resulting from a modification made to achieve an alternate dispute resolution.

38. Plaintiff has every right to challenge the validity of the note. Plaintiff has every right to know the owner of an obligation to which Plaintiff is expected to pay. Plaintiff is not challenging "securitization" of the mortgage loans. Plaintiff is alleging that in Defendants haste and greed to

17

bundle loans into mortgage backed securities, Defendants failed to lawfully transfer documents, recorded fraudulent documents in an attempt to correct the broken chain of title to the Subject Property.

39. Defendants' failure to properly perfect chain of title to the Subject Property is the problem which Defendants claim to be an asset, also makes the mortgage and note unalienable. The reason is simple: once the investment certificates to holders have been issued, the note cannot be transferred, sold or conveyed; at least not in the sense that such a transfer, sale, or conveyance should be considered lawful, legal, and legitimate. This is because the securitized note forever changes the nature of that instrument in an irreversible manner. It might appear that the inability to alienate the note has no adverse consequences for the debtor, but recent history disproves this notion. Several legislative and executive efforts to pursue alternative dispute resolution and to provide financial relief to distressed homeowners have been thwarted by the inability of the United States government to buy securitized mortgages without purchasing most of the certificates issued.

40. A *Special Purpose Vehicle* (SPV) such as the MBS Trust cannot sell any individual mortgage because the multiple certificate holders (investors) do not hold mortgages individually; the certificate holders own the thousands of mortgages held in the name of the REMIC collectively. Likewise, the certificate holders cannot sell the mortgages. All the certificate holders have are the securities, each of which can be publicly traded. The certificate holders are, in no sense, holders of any specific individual note and have no legal interest in any specific individual note. The certificate holders do not each hold undivided fractional interests in a note, which added together, total 100%. The certificate holders also are not the assignees of one or more specific installment payments made pursuant to the note. For the certificate holder, there is no note. A certificate holder does not look to a specific note for their investment's income payment. Instead, the certificate holder holds a security to a bond ("bond certificate") with specific defined payments. The issuer of trust certificates is selling segments of cash flow. The concept of securitization is brilliant. It began as a simple idea; a way to convert illiquid, long term debt into liquid, tradable short-term debt. It cashes out the lender, allowing the lender to make new "loans" while realizing an immediate profit on the notes sold.

41. A valid and legal processes associated with securitization follows a flow of the required intervening assignment of the mortgage (Deed of Trust) and endorsement, transfer, conveyance and possession of the mortgagor's original "wet ink" Promissory Note for a party enforcing foreclosure action against the mortgagor (borrower). Pursuant to the governing securitization agreement, often referred to as the Pooling and Servicing Agreement (PSA), which provides terms and strict procedure for selling of the Mortgage Loans was to create a situation whereby certain REMIC provisions under the Tax Code were strictly observed, and whereby the lender ("loan originator") selling its mortgage loans to the securitization trust entity (issuer of trust's certificates) would be protected from issues regarding either entity going into bankruptcy. For the REMIC MBS Trust to acquire this protection from Lender and Issuer from bankruptcy, "True Sale" of the each Mortgage Loan had to occur, when the Loans were transferred to the Trustee of the securitization trust. A "True Sale" of the loan would be a circumstance whereby one party owned the Note, and then sold it to another party. An offer would be made, and then accepted, with compensation given to the "seller" in return for the Note. The Notes would be transferred, and the security instruments (Mortgages or Deeds of Trust) "assigned to the buyers" of the Note, with an assignment made every step of the way, and each Note endorsed to the next party.

42. In this instant case, loan originator WELLS FARGO (also in its role as both the securitization "Sponsor" and "Depositor") is obligated by the terms and REMIC provisions of the binding securitization agreement to assign the Plaintiff's DOT and indorse the underlying original Note to HSBC USA NATIONAL ASSOCIATION ("HSBC"), as Trustee for the benefit of the Certificateholders of the WFMBS 2006-AR18 TRUST on or before the trust's "Closing Date" on October 24, 2006. This procedure outlines the proper and legal process to maintain a valid lien, one that would permit a loan servicer on behalf of the MBS Trust to foreclose on a borrower in the event of mortgage default.

43. The trustee of the MBS Trust was required to review each mortgage file within 90 days of the closing date and if any document in a mortgage file is found to be missing or defective in material respect adverse to the interest of the certificateholders in the related mortgage loan. If the seller does not cure the defect within 90 days of notice of the defect from the trustee (or within such

19

longer period not to exceed 2 years after the closing date in the case of missing documents not returned from the required public recording), the seller of such mortgage loan will be obligated to repurchase the mortgage loan from the Trust. Rather than repurchase the mortgage loan, the PSA provides that the seller may remove the mortgage loan (referred to as deleted loan) from the Trust and replace it with a qualified mortgage loan (referred to as replacement mortgage loan). However, substitution is permitted only within 2 years of the closing date to comply with the Tax Code and may not be made unless an opinion of counsel is provided to the trustee to ensure that the substitution will not disqualify the REMIC MBS Trust or result in a prohibited transaction under the Tax Code.

**G.    REMIC MBS TRUST CANNOT BUY OR SELL ANY MORTGAGE LOAN AFTER ITS CLOSING DATE**

44.    The Securitization Agreement does not permit any conveyance, transfer and assignment of mortgage loans to (or out from) the REMIC MBS Trust after its "Closing Date" on October 24, 2006.  As Plaintiff properly alleges, Defendants violated the provisions of the governing PSA only provides limited exception to this strict restriction with regards to missing documents not returned from the required public recording and substitution of defective mortgage loans in the trust. The obligation of the seller is to cure such material breach, or to substitute or repurchase a defective mortgage loan, and to indemnify for said breach constitute the sole remedies respecting a material breach of the representation or warranty to the certificate holders (investors) and the trustee. Notwithstanding, the maximum time allowance for any qualified mortgage loan to be accepted by MBS Trust refers only to replacement mortgage loan but the substitution must be completed no later than 2 years after the closing date of the trust.

45.    In order to perfect the MBS Trust's lien against the property there must be a unbroken chain of intervening assignment mortgage (the Assignment of DOT duly recorded) and endorsement of the original Note from the original lender to the securitization sponsor; then from sponsor to depositor; and ultimately from depositor to the trustee of the REMIC MBS trust on or before the its closing date (October 24, 2006).  In this instant case since WELLS FARGO is the loan originator, sponsor and WFASC is depositor in the securitization transaction, WELLS FARGO was required to

indorse the original Note and assign the DOT to HSBC, in its sole capacity as Trustee for the benefit of the Certificateholders of WFMBS 2006-AR18 TRUST. However, a review and verification of the chain of title in the Plaintiff's mortgage from the official records of the Alameda County Recorder established that such mandatory process and requirement has never taken place to date even after 9 years to date after the closing date of the REMIC MBS Trust.

46. Any late assignment of the Plaintiff's DOT and indorsement of the original mortgage Note that may be undertaken would be a material breach of the terms and REMIC provisions of the governing securitization agreement. It would constitute a violation of the PSA, and would be considered a *prohibited transaction* under the Tax Code, triggering the disqualification of the MBS Trust from continuing to enjoy its REMIC (income tax-free) status, with significant tax liabilities and penalties, assessed retroactively from the year when violation occurred. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see Levitin & Twomey, *Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].)

47. Plaintiff has never been provided with any assignment or other documentation which supports that WELLS FARGO (or FNTC) has ever acquired the full and unencumbered interest in the mortgage loan from the original lender; and Plaintiff has never been provided with evidence that anyone purchased or acquired the loan from the original lender or that the original lender actually and physically transferred the loan to any person or entity, or that any of any of those entities actually took possession and ownership of the mortgage loan from any entity.

48. Any attempted "fix" to paper over the botched securitization of Plaintiff's mortgage loan which thus resulted to an irreversible break in the title of the property is not permissible for three factual reasons:

    i. it would be far too late [several years passed since the October 24, 2006 closing date];

    ii. the assignment/conveyance of mortgage would not follow the chain of title because it was never properly endorsed from the original lender as "Seller",

"Sponsor" and "Depositor" to the Trustee of the MBS Trust [breaking the chain of title and also destroying the Trust's "bankruptcy remote" shield as a REMIC trust and violating the requirement that it must pass through each party in the securitization];

    iii.  it would only occur when the subject mortgage loan is allegedly in default status (contrary to the stipulation in the governing securitization agreement that the mortgage loan must be a qualified-performing loan).

49.  There is no documentation whatsoever that shows how and when Wells Farbo became the beneficiary or mortgagee <u>again</u> under the DOT,  the Plaintiff's mortgage was long sold by Wells Fargo in October 2006. Therefore, Plaintiff disputes Well Fargo's claim that it is the secured creditor in the mortgage loan.

50.  (or HSBC, as Trustee for the REMIC MBS Trust), as cited hereinbefore, is not the lender under the DOT and WELLS FARGO no longer has the legal standing and authority when it appointed FNTC or any party as substitute trustee under the DOT. Again, pursuant to *Covenant 24* of the DOT, only the true lender, mortgagee and beneficiary (or its duly authorized agent), has the exclusive right and authority to substitute the trustee.  The covenant also requires perfecting the recording of a valid SOT instrument with the County Recorder to be effective.

51.  The fact that there is no valid evidence of any legal interest on the part of Defendant WELLS FARGO as either the owner or holder of either the Promissory Note or the Deed of Trust (i.e., having already sold the Plaintiff's mortgage loan irrevocably in the verified securitization transaction on or before the Closing Date of October 24, 2006), WELLS FARGO could not have assumed or re-acquired again any ownership interest in either the Note or the Deed of Trust.

52.  Therefore, the 2nd SOT issued by WELLS FARGO (Complaint Exhibit "F") appointing FNTC as substitute Trustee under the Deed of Trust is not only invalid but it is also fraudulent. Said trustee substitution instrument, which purportedly gave the right and power to FNTC to foreclose on Plaintiff's home property, is null and void (not just voidable) and not in compliance with the foreclosure laws of California.

53.  There is no evidence whatsoever that the foreclosure of Plaintiff's home property was supported by any legal standing or authority to do so. Original lender WELLS FARGO had already long sold and securitized the Plaintiff's mortgage loan into the WFMBS 2006-AR18 TRUST on or

before the trust's closing date on October 24, 2006. WELLS FARGO had already been paid for the full balance of the Plaintiff's mortgage loan pursuant to the governing PSA. Thereafter, WELLS FARGO was only designated and authorized in the PSA to service the subject loan on behalf of the WFMBS 2006-AR18 TRUST. Pursuant to the governing securitization agreement (PSA), the loan servicer is authorized to collect mortgage payments and foreclose on defaulted loans on behalf of the MBS Trust. However, since Plaintiff's mortgage loan never made it to the REMIC MBS Trust because of the botched securitization, the Trustee of the WFMBS 2006-AR18 TRUST does not have any legal standing, and therefore any right and power to authorize WELLS FARGO to act as its servicer and agent on Plaintiff's mortgage loan. HSBC, as Trustee for the benefit of the Certificateholders of the WFMBS 2006-AR18 TRUST, never received the intervening assigning of the mortgage (DOT) and endorsement of the underlying original Note, and therefore, Defendant WELLS FARGO does not have any standing and beneficial interest also to either act as the "pretender" lender and servicer in Plaintiff's mortgage loan and declare an alleged loan default and cause the foreclosure action against Plaintiff's property. So the "servicing" cannot be, and was never, authorized by the REMIC MBS Trust, and WELLS FARGO's ownership and title in the mortgage loan was effectively extinguished when it was paid for the full balance of the Plaintiff's loan on or before October 24, 2006. Neither WELLS FARGO nor HSBC, as Trustee for the REMIC MBS Trust, held any legal ownership title and beneficial interest in Plaintiff's Note and the Deed of Trust.

54. In securitization transactions, the bundle of rights incident to the promissory notes and the deeds of trust were sold in parsed fashion to one or more third parties as collateral for one or more of the Special Investment Vehicles (SIV's). These took the form of securitized trusts such as Collateral Debt Obligations (CDO's), Collateralized Mortgage Obligations (CMO's) or other forms of mortgage-backed securities (MBS) and/or in connection with one or more credit default swaps (CDS). With securitization of the mortgages, the "Originating Lenders" are then able to take these loans (a non-liquid asset) off their books, eliminating the need to maintain the required capital reserves for contingency against default. As such, the true owner(s) and holder(s) of the notes and deeds of trust are unknown.

55. Moreover, in view of:

    a.    the Plaintiff's loan being paid in full by the MBS Trust's credit default swap (CDS) and insurance covering Mortgage Loans in the Trust Fund in the event of a loan default;

    b.    the lack of evidence of any lawful transfer of either the Note or the Deed of Trust from the original lender to any person or party;

    c.    the lack of any evidence of possession or ownership of either the Note or the Deed of Trust by any of the Defendants;

    d.    the SOT and Foreclosure Notices (NODs and NOTS) being fraudulent documents; and

    e.    the foreclosure not being instituted by any legal authority on the party of any of the Defendants, the foreclosure has been wrongfully instituted.

No Defendants have no legal or equitable claim of right or interest in any part of Plaintiff's Property.

56. After October 24, 2006, Plaintiff's Note was not an asset belonging to WELLS FARGO. As a consequence of the botched securitization of the mortgage loan, the DOT is now void and of no legal effect. Plaintiff is further informed and believes and thereon alleges that WELLS FARGO does not have the original of the Note, but that even if it did, such Note is null and void because it was already irrevocably sold by original noteholder WELLS FARGO in the verified securitization transaction.

57. Plaintiff is informed and believes and thereon alleges that the Defendants herein, and each of them, at all times herein mentioned, knew that WELLS FARGO no longer has any legal interest in Plaintiff's Note and that the Defendants maliciously and intentionally took advantage of the presumed ignorance of the Plaintiff and this court by claiming to be the owner of the Note and the beneficiary of the DOT long after the Note was sold and payment therefor received by the original Lender.

58. Plaintiff is informed and believes and thereon alleges that any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law. Without ownership interest in the Note and DOT, Defendants herein foreclosed Plaintiff's property despite the fact that WELLS FARGO no longer has any financial and beneficial interest in any document encumbering Plaintiff's property. Clear title may not be derived from a fraud - including to an alleged bona fide purchaser for value).

59. In the case of a fraudulent real estate transaction California law is settled. The Court in

*Trout v. Taylor*, (1934), 220 Cal. 652 at 656 made as much plain: "Numerous authorities have established the rule that an instrument wholly void, such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of bona fide purchase. Consequently, the fact that defendant *Archer* acted in good faith in dealing with persons who apparently held legal title, is not in itself sufficient basis for relief." (Emphasis added, internal citations omitted.) This sentiment was clearly echoed in *Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279 at 1286 where the Court stated:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. (Emphasis added.)

Although the Note identifies the party to whom payments under the Note are to be made as the Note Holder, none of the documents attached to this Complaint, which constitute the basis for Defendant's fraudulent foreclosure action, describe, identify or claim that person or entity named in those documents is in fact the Note Holder entitled to benefit under the DOT and entitled to enforce the Note by non-judicial foreclosure.

60. Further, without the presence of the true Note Holder, complete relief cannot be granted to Plaintiff and Defendants' foreclosure would be permitted even though Defendants lack the requisite legal ability and right to foreclose without substantive and incontrovertible evidence supporting any of the Defendants' authority to act. Defendants, and each of them, have no legal right to come before this court to challenge Plaintiff's claim to exclusive right, title and interest in Plaintiff's real property. Plaintiff is further informed and believes and thereon alleges that defendant WELLS FARGO's actions regarding Plaintiff's property is nothing more than another example of what has been termed a "Pretender Lender" illegally and unlawfully seizing the property of others.

61. Because WELLS FARGO is no longer the lender and mortgagee in the Plaintiff's mortgage loan that had already been sold in October 2006, the SOT instrument issued by WELLS FARGO ((Complaint Exhibit "F" −purportedly appointing FNTC to act as Trustee in Plaintiff's DOT) is invalid and fraudulent. It is void for the additional reason that, under Section 2934(a)(1)(A)

of California's non-judicial foreclosure statute, all beneficiaries must acknowledge and record the substitution of trustee. In this instant case, the "unknown present beneficiary" did not acknowledge, authorize or record the SOT instrument. Therefore, the appointment of FNTC as substitute trustee under the DOT is <u>without</u> any valid and legal authority; it is void under Section 2934(a)(1)(A) and tender of the outstanding loan amount is not required to attack the wrongful and illegal foreclosure sale of the property. *Dimrock v. Emerald Properties* (2000) 81 Cal.App. 4th 686, 678.

62. Because the SOT instrument by WELLS FARGO to FNTC was not only invalid but also fraudulent, it follows that the NOD, and subsequent NOTS and TDUS issued by FNTC as purported Trustee in the DOT were also a nullity, without any legal force and effect. The Defendants have not complied with California Civil Code § 2932.5 which provides in pertinent part that where a power to sell real property is given to a mortgagee, or other encumbrancer in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. WELLS FARGO here claimed to be the mortgagee/encumbrancer; however, in fact it no longer held the legal standing because it cannot prove to this court that it was the valid holder in due course of the negotiable instrument (the Note) while simultaneously being the true beneficiary of the DOT when it caused and fraudulently enabled invalid substitute Trustee FNTC to sell Plaintiff's property illegally at the foreclosure sale on August 9, 2012. In other words, WELLS FARGO is nothing more than a "pretender lender" [and "pretender loan servicer"] who took advantage of and capitalized on Plaintiff's ignorance and thereby fraudulently selling Plaintiff's real property through its agent, Defendant FNTC.

63. FNTC issued and recorded the NOD, NOTS and TDUS as purported as "substitute Trustee" in the DOT. However, FNTC is not the valid trustee in the DOT. In order for FNTC to act as Trustee in the mortgage, it has to be substituted as the trustee in the DOT by the present true beneficiary and real party in interest in the security instrument and mortgage Note who remains undocumented and unknown to date because the botched securitization of the subject mortgage loan.

64. California Civil Code 2924 provides that a power of sale (*Covenant No. 22* in the DOT) shall not be exercised until "the trustee, mortgagee, or beneficiary, or any of their authorized agent

26

1 shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust
2 property or some part or parcel thereof is situated, a notice of default." Civ. Code § 2924. While the
3 verified securitization of the Plaintiff's mortgage loan identified and alleged the identity of the
4 transferee(s), there is no legal document perfecting the transfer of the mortgage loan in the public
5 chain of title. Under Section 2924 there can be no foreclosure, because there is no legal beneficiary
6 recorded in the public chain of title.

7      65.  Because no Substitution of Trustee instrument was issued and recorded by a valid party,
8 it follows that the foreclosure process initiated and completed by Defendant FNTC (as directed by
9 Defendant WELLS FARGO) was not only invalid, but illegal as well. Because FNTC is not the
10 valid Trustee in Plaintiff's DOT, or the even the authorized agent of the undocumented and
11 unknown beneficiary and real party in interest in the mortgage loan, all of the instruments issued and
12 recorded by FNTC regarding the foreclosure proceedings and subsequent Trustee's sale are invalid,
13 and therefore null and void.

14      66.  Moreover, California Business and Professional Code § 17200 prohibits unlawful,
15 unfair, or fraudulent business practices. In this instant case, WELLS FARGO and FNTC engaged in
16 business practices that violate Section 17200 because WELLS FARGO, who was no longer the
17 lender and the present mortgagee, executed and recorded an invalid and fraudulent SOT instrument;
18 and FNTC issued and recorded the NOD (Complaint Exhibit "E"), NOTS (Complaint Exhibit "G")
19 and TDUS (Complaint Exhibit "H"), knowing that it was not a valid Trustee under the DOT and
20 thus lacked the legal power to act Trustee. Basing the foreclosure process of the trust property on
21 such false and invalid documents is wrongful and constitutes unlawful and unfair business practices.

22      67.  The power of sale may be exercised by the assignee if there is a valid assignment that is
23 duly acknowledged and recorded. The Foreclosure Law in California must be strictly adhered to or
24 the foreclosure sale is void.  If the SOT, NOD and NOTS are each invalid, then the resulting
25 foreclosure is void, not merely voidable, and there is no obligation under California law to "tender"
26 the loan balance to set aside the sale.  When a loan has been paid in full, the notion of a required
27 tender is a contradiction – the loan has been paid in full.  Nevertheless, specifically regarding the
28 SOT in this instant case, while the instrument was recorded with the county recorder and provides

27

an appearance of compliance with Cal. Civ. Code § 2934a(1)(A), such recording of an invalid and fraudulent SOT instrument is a nullity. Based on such violation, there was no compliance with Section 2934a(1)(A). If the SOT is not valid, and therefore there was no valid SOT instrument recorded, the foreclosure sale would be void, with no requirement for a "tender."

68. Where, as here, fraud permeates and infuses virtually every aspect of California's foreclosure process, there is no need for a wronged property owner to tender any payment to the interlopers. The Defendants in this case are mere interlopers pretending to be the legitimate holder of the Note and DOT when they know that they are not. Plaintiff owes them nothing and has no obligation to pay them anything, much less make a tender of payment to the Defendants.

69. Plaintiff is informed and believes and thereon alleges that defendants knowingly and intentionally proceeded with the illegal foreclosure sale of the Plaintiff's real property. At the time the Defendants noticed the Trustee's Sale, Defendants knew that the statements were false and fraudulent and the truth was that FNTC was never legally substituted as the trustee on the DOT encumbering Plaintiff's real property.

70. Likewise, Defendants FNTC and WELLS FARGO knew of the falsity of the contents of these documents, including the SOT instrument as recorded. Fraudulent and/or Defective mortgage instruments were filed in the public records of the Alameda County Recorder's Office, specifically: the SOT, the NOD, NOTS and TDUS. Fraudulent acts were committed beginning in October 2006 with the alleged sale of Plaintiff's mortgage to a third party in the securitization transaction without assigning the DOT and indorsing the underlying original mortgage note and consequently irreversibly braking the chain of title in the mortgage loan, with the true beneficiary, mortgagee and secured creditor undocumented and now unknown. Both Defendants WELLS FARGO and FNTC were well aware that Plaintiff's mortgage loan had already been sold by WELLS FARGO and that both WELLS FARGO and FNTC were knowingly committing illegal acts when the NOD, SOT, NOTS and TDUS were issued and recorded.

71. As a matter of law, only the secured real party in interest (or its authorized agent) can foreclose against the mortgage loan. WELLS FARGO on one hand falsely represented itself as the secured creditor (and allegedly as the loan servicer for the REMIC MBS Trust) without validating

28

such right and authority; On the other hand, FNTC represented itself as the a "duly appointed Trustee" in the DOT based on an invalid SOT by WELLS FARGO, who was no longer the Lender, mortgagee and Note holder when such instrument was issued on May 6, 2011 and recorded on August 11, 2011. Neither Defendant has any supporting evidence to show that it is the authorized agent of the undocumented and unknown Beneficiary and Noteholder. Not one of the Defendants here has any authority to foreclose on the subject property as neither one is the secured party. Likewise, the same applies to HSBC, as Trustee for the benefit of the Certificateholder of the WFMBS 2006-AR18 TRUST, since there is no document or evidence to support that such REMIC MBS Trust entity has any legal interest in Plaintiff's mortgage loan. The chain of title in the subject mortgage is broken because of the botched securitization transaction, with the true beneficiary, mortgagee and noteholder undocumented and unknown.

72. Alternatively, for the MBS TRUST to exercise rights of foreclosure, it may be undertaking actions inconsistent with its status as a REMIC – a "pass-through" entity - under Federal law. For other parties to undertake such action may not be permitted to do so given either absence of 1) standing as a holder of interest or 2) conveyance of authority to act through proper assignment under the governing securitization agreement (PSA). In order for one of these investment trusts to qualify for the "pass through" tax benefit of a REMIC, all legal and equitable interest in the mortgages held in the name of the trust are vested in the investors, not in anyone else at any time. If legal and/or equitable interest in the mortgages held in the name of the trust is claimed by anyone other than the investors, those that are making those misrepresentations are either defrauding the investors, or the homeowners & courts, or both. On information and belief, this was the reason why HSBC, as Trustee for the Certificateholders of the WFMBS 2006-AR18 TRUST did not move forward with a foreclosure action against Plaintiff's mortgage loan.

73. The Plaintiff herein relied on loan servicer WELLS FARGO's misrepresentations and has been damaged in the following ways: 1) if the unlawful foreclosure of the property is not nullified and reversed by the court, multiple other parties may still seek to enforce the alleged debt obligation against the mortgagor; 2) the title to the real estate property has been clouded and fatally, as the purchaser of subject property will now find themselves in legal limbo; 3) before and during the

foreclosure proceedings, mortgagor never had the opportunity to negotiate a loan modification with the unknown real party in interest or even sell his property with a fatally defective chain of title to avoid the foreclosure; 4) mortgagor had been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; 5) mortgagor is unable to determine whether the monthly mortgage payments were paid to the right party; and 6) mortgagor have to expend significant funds to cover the cost of attorney's fees and related cost to regain and quite title.

74. It is not possible that the mortgage lender and Wall Street investors simultaneously own the same mortgage when the securitized mortgage loan (as in this instant case) has already been converted into an investment grade securities, and the investors have already paid for it. Further, the Uniform Commercial Code under Article 3 (*Negotiable Instruments*) no longer governs these securities. As securities they are now governed by UCC Article 8 (Securities), which carry a whole different set of rules and regulations that must be followed to make the transaction valid, including but not limited to informing the property owner that the same is entering into a third party transaction with multiple investors. This was never done in this instant case.

## H.    PLAINTIFF IS NOT CHALLENGING SECURITIZATION

75.  Plaintiff here does not dispute WELLS FARGO's right to securitize the mortgages or claim standing in the mortgage securitization but rather alleges that as a result of improper procedures and the failure of WELLS FARGO (and the parties to the securitization transaction) to follow its own governing Trust Agreement, the true owner of Plaintiff's mortgage is undocumented and now unknown.  Plaintiff here alleges the fact that original lender WELLS FARGO no longer held ownership title and beneficial interest in Plaintiff's Note and Deed of Trust after it was paid in full in the securitization transaction for the balance of the mortgage loan.  In Re *Johnson v. HSBC et al.* (U.S. District Court, S.D. California Case No. 3:11-cv-2091-JM-WVG) and in Re *Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al.* (U.S. District Court, S.D. California Case No. 11-cv-2229-L), the mortgage loan in each of these cases was securitized but the securitizing parties also failed to follow their own Trust Agreement(s) [i.e., governing *Pooling and Serving Agreement* & binding *Mortgage Loan Purchase Agreement*"]. The "attempted" securitization failed as in this instant case. In *Johnson* case, the court concluded that the Plaintiff is not categorically excluded in making claims

based on allegations surrounding the loan's securitization. In *Naranjo* case, the court denied in part Defendants' Motion to Dismiss stating, "the vital allegation in this case is the assignment of the loan into the WAMU Trust was not completed by May 30, 2003 as required by the Trust Agreement. This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper. Defendants wholly fail to address that issue. This reason alone is sufficient to deny Defendant's motion with respect to this issue." Also in Re *Vogan v. Wells Fargo, N.A.,* 2011 WL 5826016 (E.D. Cal. 2011) [allowing Section 17200 claim when plaintiffs alleged that assignment was executed after the closing date of securities pool, "giving rise to plausible inference that some part of the recorded assignment was fabricated"]. The Plaintiff in *Vogan* case alleges both violations of the PSA and relevant law. The court here found that "BofA has not sufficiently demonstrated that violations of law associated with the loan's securitization can go unchecked because Plaintiff is not party to the PSA."

76. In this instant case, original lender WELLS FARGO's ownership and beneficial interest in the mortgage loan was effectively extinguished on the date of sale ("Closing Date" of the MBS Trust) when WELLS FARGO was paid in full for irrevocably selling the loan to the securitization depositor pursuant to the terms of the governing and binding securitization agreement(s) [i.e., *"True Sale" representations, warranties & covenants of the loan originator/seller and depositor in the PSA*]. Despite being paid for the full balance of the mortgage loan, the original lender [*acting as the securitization sponsor and seller*] as well as the interim successor lender [securitization depositor] committed a material breach of the governing securitization agreement(s) when these parties failed to assign the mortgage (DOT) and the underlying original mortgage note to the trustee of the REMIC MBS Trust on or before the trust's "Closing Date." Because the interim purchaser/successor lender (i.e., the *securitization depositor*) never received the required assignment of the deed of trust/mortgage and endorsement of the underlying original note, such depositor could not and did not legally and validly assign, transfer and convey my mortgage loan to the Trustee of the REMIC MBS Trust on or before the trust's "Closing Date." Such failures on the part of originating lender and securitization depositor to adhere to their own Trust Agreement(s) consequently resulted to an irreversible break in the chain of title, with the new beneficiary and real party in interest in and to

the mortgage loan now <u>UNDOCUMENTED and UNKNOWN</u>. The botched securitization casts a cloud in the title that is detrimental to the mortgagor because it renders the property securing the mortgage loan unmarketable with the title fatally defective. Also, in the event of a mortgage default, as in this case, the mortgagor never had the opportunity to negotiate a reasonable loan modification with the true party in interest to avoid the foreclosure of his property.

**FIRST CAUSE OF ACTION**
**WRONGFUL FORECLOSURE**

77.  Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

78.  Defendants had both common law and statutory duties to Plaintiff. Defendants had a statutory duty to conduct themselves in strict compliance with all statutory provisions regulating their conduct. Defendants also had common law duties to treat Plaintiff fairly and to not injure either Plaintiff or his Property and to not infringe on any of Plaintiff's rights.

79.  Defendants negligently breached the duties specified herein by, among other things, negligently failing to follow statutory requirements in initiating foreclosure, and subsequently foreclosing and selling Plaintiff's Property. The acts and omissions include the fact that Defendants executed and recorded the NOD, SOT, NOTS and TDUS, all without having authority to do so, as the true unknown beneficiary did not authorize and/or execute said documents, nor did the true unknown beneficiary directed any of the Defendants to take any action on behalf of itself. Additionally, the SOT instrument appointing Defendant FNTC was executed Defendant WELLS FARGO based on fraud, as more specifically pleaded in the Second Cause of Action, and thus rendering the NOD, NOTS and TDUS by FNTC void as a matter of law. Defendants foreclosed Plaintiff's home property wrongfully, through the use of both invalid and fraudulent documents, which effectively void the TDUS and hold ineffective the other aforementioned documents valid. These invalid and fraudulent documents prejudicially harmed Plaintiff, as Defendants were neither the true beneficiary, nor agents of the true beneficiary foreclosed on and illegally sold Plaintiff's home. The acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL

32

1831799, slip opn. p. 8; see Levitin & Twomey, *Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].)

80.  Defendants' acts are also in violation of California's non-judicial foreclosure scheme as codified under §2924 et seq. Specifically:

a.  The SOT issued by WELLS FARGO is invalid and void for the reasons specified herein.

b.  The NOD initiating the foreclosure was recorded in the name of an unknown party or not the true "beneficiary" in the mortgage loan.

c.  Under California law the NOD which initiated the foreclosure on behalf of a party who is not a *true beneficiary at the time of filing the NOD* is void *ab initio*, rendering any subsequent foreclosure based on that NOD and the NOTS void as well. That is exactly the case here.

d.  As a separate ground for invalidation of the foreclosure - the entire chain of recorded documents is predicated on the basis that WELLS FARGO still had a recognizable legal interest in the Plaintiff's DOT, which was not the case here.

As detailed hereinbefore, Plaintiff believes and alleges that WELLS FARGO substituted FNTC as trustee in the DOT, without any standing and authority from the "unknown" and "undocumented" true beneficiary and real party in interest in Plaintiff's mortgage loan. Following the broken chain through to conclusion, this means the NOD, NOTS and TDUS that were issued by FNTC, who is not a valid trustee, mortgagee, beneficiary or authorized agent of the unknown and undocumented true beneficiary, are each VOID. It is well established that where a purported trustee without authority conducts a trustee's sale, that sale is *void* as a matter of law and must be rescinded. Defendants, collectively, refused to stop the foreclosure process despite the challenge and requests from Plaintiff, and subsequently wrongfully foreclosed and sold Plaintiff's home without the legal authority to do so.

81.  Defendant FNTC, not the trustee or authorized agent of the unknown and undocumented true beneficiary in the DOT, initiated and completed the foreclosure proceedings on Plaintiff's property based on illegal and fraudulent SOT by Defendant WELLS FARGO. Defendant FNTC knowingly recorded invalid and fraudulent foreclosure documents at the behest of Defendant WELLS FARGO, and thereby willfully violated the requirements of California's non-judicial

foreclosure statutes.

82. In initiating the aforementioned illegal foreclosure proceedings, all and each of the Defendants here acted with willful oppressiveness and malice toward the Plaintiff.

## I.   TENDER RULE NOT APPLICABLE WHEN FRAUD IS ALLEGED

83. Where a trustee's sale can be shown as unlawfully conducted and therefore void, a showing of tender of amount due is rendered unnecessary. (*Bank of America v. La Jolla Group II*, (2005) 129 Cal.App.4th 706, 712, 28 Cal.Rptr.3d 825).

84. Here, as set forth above, Plaintiff properly alleges that the foreclosure sale is VOID, not just voidable, and that it would be inequitable to require tender. Even assuming arguendo that Defendants could muster the sentiment of this Court to side with their contentious ideology, foreclosing here would nonetheless be highly inequitable and injurious beyond repair and result in manifest injustice to Plaintiff.

85. The tender requirement does not apply to this case because Plaintiff alleges that documents recorded and used by Defendants are fraudulent and defective, and have no force and effect, are null, void and moot.

86. Denying the Defendants' the ability to enforce the clouded title and invalid mortgage and foreclosure instruments would also find support in deferring to public policy considerations of fairness and in the interests of justice.

87. Plaintiff has suffered, and continue to suffer damages, proximately caused by FNTC's illegal and fraudulent foreclosure activities against them, including but not limited to the loss of their real property, severe emotional distress, mortgage payments wrongfully paid to WELLS FARGO which had no the authority to collect such payments, increased costs and fees assessed against them associated with the wrongful foreclosure activities, legal fees to regain title of the property, and inter alia, damage to their credit. Plaintiff has been prejudicially damaged by the actions of Defendants in an amount not presently ascertained and will be proven at trial. Plaintiff is also entitled and seeks punitive damages against the Defendants as a result of the illegal, fraudulent and willfully oppressive foreclosure activities against Plaintiff that Defendant FNTC has engaged in at the direction of Defendant WELLS FARGO. Tender is not required where the foreclosure sale is void,

rather than voidable, such as when a plaintiff proves that the entity lacked the authority to foreclose on the property.  (Lester v. J.P. Morgan Chase Bank, supra, F.Supp.2d., [2013 WL 633333, p. 8]; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, § 10:212, p. 686.)

## SECOND CAUSE OF ACTION
## CONSTRUCTIVE FRAUD

88.  Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

89.   The definition of fiduciary 1) n. from the Latin fiducia, meaning "trust," a person (or a business like a bank or stock brokerage) who has the power and obligation to act for another (often called the beneficiary) under circumstances which require total trust, good faith and honesty. … Characteristically, the fiduciary has greater knowledge and expertise about the matters being handled. A fiduciary is held to a standard of conduct and trust above that of a stranger or of a casual business person. He/she/it must avoid "self-dealing" or "conflicts of interests" in which the potential benefit to the fiduciary is in conflict with what is best for the person who trusts him/her/it.   While a fiduciary and the beneficiary may join together in a business venture or a purchase of property, the best interest of the beneficiary must be primary, and absolute candor is required of the fiduciary.

90.   In California, the test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are:

(1) The extent to which the transaction was intended to affect the plaintiff:  In 2006, Plaintiff entered into LOAN with Wells Fargo using his investment homestead to secure the loan. Because the loan is secured by his home, it is called a mortgage. Plaintiff expected to pay his mortgage and enjoy the benefits of homeownership.  In 2006 and before, Plaintiff trusted banks with his money, and financial transaction and to act in good faith when dealing with that money and in that transaction.  A mortgage has just two parties: the borrower and the lender. A deed of trust, however, has an additional third party, called a "trustee" who holds onto the title of the home until the loan is repaid. If the loan isn't repaid, the trustee -- often times an escrow company -- is responsible for starting the foreclosure process.  Plaintiff

35

alleges herein the original Lender Wells Fargo had a fiduciary duty to Plaintiff to CLEARLY explain that upon the transfer of his MORTGAGE to parties unknown Plaintiff would be expected to pay several parties unknown. Plaintiff alleges that the mortgage was entered into with in good faith by Plaintiff and plaintiff relied on the representations made by Wells Fargo that his investment was "safe" secure and in good faith. Wells Fargo intended to deceive Plaintiff from the inception of the loan, by transferring the mortgage into a "trust" days after the mortgage was signed, charging excessive fees, filing and recording fraudulent documents and other acts that clearly breach the understood fiduciary duty to Plaintiff.

(2) The foreseeability of harm to him: Prior to the mortgage crisis Plaintiff could not have known the extend of mortgage fraud and that the bank he trusted with the security of his home would engage the other Defendant to perpetrate, draft, record and enforcee an unlawful foreclosure.

(3) The degree of certainty that the plaintiff suffered injury: Plaintiff was wrongfully foreclosed upon, lost all of his investment and down payment in the Subject Property and by Defendants transferring the full amount of the Mortgage/Deed of Trust without deducting any portion of Plaintiff's down payment and years of payments on his investment, Plaintiff was forced to move from his property, was embarrassed by the public notices posted and recorded along with all the other harms alleged herein. Plaintiff could not have known this was the intention of Defendants, as the Mortgage crisis allegedly came to light in 2008. Plaintiff has suffering financial devastation at the hands of Defendants as properly alleged hereing.,

(4) The closeness of the connection between the defendant's conduct and the injury suffered: Defendants filed and recorded fraudulent and defective documents with the intent to benefit from wrongful foreclosure.

(5) The moral blame attached to the defendant's conduct: In California the transfer of real estate cannot be based upon fraud. Defendant allege two defaults based on defective documents. These fraudulent documents were created to effect a wrongful foreclosure, and

Karthik Subramani v. Wells Fargo Bank, N.A., et al.          Verified Second Amended Complaint

(6) The policy of preventing future harm:  50 States Attorney made settlements with several banks and many of them paid huge monetary fines, including Defendant Wells Fargo. Despite this, Plaintiff was never offered a loan modification, any semblance of a reasonable settlement.  Plaintiff alleges as a result of the failure of Defendants to act in good faith, that foreclosure was based on fraudulent documents that render's the trustee's sale VOID not voideable, Plaintiff lost his home, his homestead and investment.  Plaintiff had no idea Defendants intention was to put his mortgage into Default Swap securities and fund any Wall Street transaction. Defendants failed to advise plaintiff that the purpose of the mortgage was to fund mortgage backed securities and that his investment would be lost and he would lose him home.  These acts are immoral, violate state, federal laws and quite possibly the penal code.

*Heritage Oaks Partners v. First Am. Title Ins. Co*., 155 Cal. App. 4th 339, 345 (Cal. Ct. App. 2007). *Glaski v Bank of America*, 218 Cal.App.4th 1079 (2013), 160 Cal. Rptr. 3d 449 states in pertinent part:

> …a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement. We therefore reverse the judgment of dismissal and remand for further proceedings.

Defendants had a fiduciary relationship to Plaintiff.  Plaintiff TRUSTED his lender to act in good faith, keep the chain of title clear and act in good faith. Not create fraudulent documents to effect an unlawful foreclosure because Defendants FAILED to meet the conditions precedent of not only Plaintiff's Deed of Trust, but the terms of the PSA.   Plaintiff did not expect his investment be used to fund some sort of Wall Street securities.  A fiduciary relationship is where one person places complete confidence in another in regard to a particular transaction or one's general affairs or business. The relationship is not necessarily formally or legally established as in a declaration of trust, but can be one of moral or personal responsibility, due to the superior knowledge and training

of the fiduciary as compared to the one whose affairs the fiduciary is handling. The *Glaski* decision came down in August 2013, it is fairly new and would hardly be the "majority" decision at this time, but is it a fair and just decision. Plaintiff is expected to pay mortgage to the beneficiaries/investors of a trust who whom Plaintiff did not enter into any contract with. Plaintiff is entitled to know who his lender is and that lender should be able to provide clear evidence that if there was any "default" Defendants should have clear evidence that cannot be disputed. Defendants cannot provide this evidence. Plaintiff has been harmed as a result of the bad faith and unclean hands of Defendants in these matters. Furthermore, California statutes define species of fraud and recite the necessary elements, and expressly recites that whether fraud occurred is an issue of fact. Civil Code §1574. Therefore, it cannot be dispensed with through a Rule 12(b)(6) motion to dismiss.

91. The elements of a fraud cause of action are (1) misrepresentation, (2) knowledge of the falsity or scienter, (3) intent to defraud—that is, induce reliance, (4) justifiable reliance, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) These elements may not be pleaded in a general or conclusory fashion. (Id. at p. 645.) Fraud must be pled specifically—that is, a plaintiff must plead facts that show with particularity the elements of the cause of action. (Ibid.) **Misrepresentation**: Plaintiff sought to purchase a home as his homestead, an investment and possibly a legacy for his family. Defendants' knew or reasonable should have known prior to Plaintiff's purchase of the property that they would immediately transfer the mortgage in to a securitized trust and Defendants would take out Default Swap Insurance against the property. In order to collect this insurance Plaintiff would have to default on the mortgage. Defendants failed to advise Plaintiff that in order to collect default swap insurance they would inflate mortgage fees, and take and and all actions – legal or illegal - to make the appearance of default so defendants could collect this insurance against Plaintiff's homestead and leave his family homeless. While many claim the mortgage crisis began in 2088, it was 2006 when the mortgage crisis began. Had Plaintiff known the goal of the lender is for the homeowner to result in default and foreclosure, Plaintiff would have made a different choice. **Knowledge of falsity or scienter**: As properly plead herein, Defendants knew at the time Plaintiff made the mortgage that the Bank planned to securitize the loan and the majority of loans in these default

38

swaps result foreclosure. Defendants failed to advise Plaintiff that they would be taking out insurance to ensure that Plaintiff would default on their loan resulting in foreclosure. Had Defendants made this representation Plaintiff would have made a different choice for investing in his family's future. **Intent to defraud:** Defendants' intention was to defraud Plaintiff from the onset of the mortgage. Taking out insurance to ensure default, charging late fees to increase debt. In Defendants' haste to put mortgages into the securitized trust, Defendants failed to lawfully, legally and/or properly transfer title to protect the chain of title to the Subject Property. Defendants then filed fraudulent documents which resulted in a wrongful foreclosure. **Justifiable reliance:** Plaintiff went to Bank obtain a Mortgage for an investment for his family. At no time did any Defendant advise Plaintiff that his investment, the Subject Property, was nothing to the bank than a mortgage loan to satisfy certain requirements of the securitized trust. Plaintiff would not be in court now, had Defendants acted in good faith. Plaintiff did not seek a hard money loan, Plaintiff went to a bank, trusted the bank to handle his money. Instead, Defendants, and each of them, and in particular Wells Fargo which has a long history of defrauding its clients and other bad faith acts – unbeknownst to Plaintiff at the time obtaining the loan – sought to use homeowners as "marks" to fund their dealings on Wall Street. Defendants filed and recorded fraudulent documents in the Recorders office to effect a fraudulent and defective foreclosure. **Resulting damages:** Defendants acted in concert to effect a wrongful foreclosure based upon documents the Defendants knew or reasonably should have known were fraudulent when Defendants filed and recorded them. Defendants used the United States Postal system to mail fraudulent documents to Plaintiff. Plaintiff is harmed by the threat of homelessness from the unlawful theft of the Subject Property, Plaintiff's homestead which Defendants intended to set Plaintiff up to fail from the onset. Plaintiff will lose all monies invested in the home. Defendants have ruined Plaintiff's credit, reporting defaults based upon fraud as properly alleged herein. Plaintiff incorporates this entire Second Amended complaint and the Exhibits as evidence of the fraud perpetrated upon Plaintiff by these Defendants as properly alleged herein.

92. Defendants, and each of them, have acted intentionally and with malice and oppression against Plaintiff, proximately and actually causing Plaintiff and his family harm. The

aforementioned Defendants' conduct was egregious and encompassed a scheme and pattern of behavior, entitling Plaintiff to an award of exemplary and punitive damages.

93.   For all these reasons because Defendants CLEARLY acted outside of their scope as conventional lender. Defendants traded Plaintiffs mortgage on Wall Street, intended to defraud Plaintiff of his primary residence, a conventional money lender creating and benefiting from fraudulent documents are clearly outside the scope of the conventional role as a lender of money.

### THIRD CAUSE OF ACTION
### CANCELLATION OF FRAUDULENT INSTRUMENTS

94.   Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

95.   Although the Trustee's Deed Upon Sale ("TDUS") appears valid on its face, it is invalid, and of no legal force and effect, for the reasons set forth above including, inter alia, the fact the DOT which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure became void as a result of the bungled securitization and the Defendants acting without any legal standing and authority from the unknown beneficiary in the mortgage loan.  Plaintiff is damaged by clouds on his title.   If these recorded documents are left outstanding, Plaintiff has unjustly lost his property based upon documents that render the transaction void not voidable.  Thus, the resulting foreclosure is also fatally flawed and defective.

96. Cal. Civ. Code § 3412 provides in part: "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, on that person's application, be so adjudged and ordered to be delivered up or canceled." Plaintiff is informed and believes and thereon alleges that the written instruments affecting Plaintiff's real property have become a nullity and that if left outstanding they could cause injury to Plaintiff, or may be used vexatiously against him.  Plaintiff is further informed and believes that he is entitled to equitable relief from this court in the form of having the aforesaid written instruments delivered up and canceled when the evidence to impeach or invalidate the aforesaid written instruments is lost or may throw a cloud or suspicion over Plaintiff's title.

Karthik Subramani v. Wells Fargo Bank, N.A., et al.                    Verified Second Amended Complaint

97. Under Civ. Code § 3413, for a Deed of Trust to be subject to a cause of action for cancellation, the instrument must be a lawful and valid documents. In California, the transfer of real estate cannot be based upon fraud. At the time Plaintiff executed the DOT and Note, said documents appeared to be valid as uniform instruments related to real property transactions. Defendants intentions to defraud Plaintiff was not disclosed. Plaintiff alleges that Defendants are unable to show clean, properly recorded and uninterrupted transfers and assignments of the Note and DOT to them, entitling Defendants to make any claim against Plaintiff's real property. Plaintiff suffers and continues to suffer manifest injustice in these matters.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

98. Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

99. Defendants have claimed rights to Plaintiff's Note. Plaintiff has in fact made payments to Defendant WELLS FARGO pursuant to and in reliance upon WELLS FARGO's claim to rights to such payments. As alleged hereinabove, Defendants here do not have rights to such payments. Defendants had knowledge of such circumstances giving rise to unjust enrichment at the time of claiming rights to payment from Plaintiff on the Note. Defendants knowingly acquired a benefit at the expense of Plaintiff without Plaintiff's knowledge. Defendants, and each of them, received a benefit from Plaintiff of money had and received. It is unjust for Defendants to retain the benefit at the expense of Plaintiff. The true amount to the extent to which the Defendants, and each of them, have been unjustly enriched is unknown to Plaintiff at this time but the amount is believed to be within the jurisdictional limits of this court. When the true amount is known Plaintiff will either seek leave of court to amend this complaint or else present proof of same at the time of trial.

100. Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, have no rights to the payments that Plaintiff made on the Note and that the same, with interest at the legal rate, should be refunded to Plaintiff.

/ / /

/ / /

Karthik Subramani v. Wells Fargo Bank, N.A., et al.                Verified Second Amended Complaint

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE TRUTH-IN-LENDING ACT 15 U.S.C 1601 *et seq*.**

101. Plaintiff refers to and incorporates herein as though fully set forth herein the allegations contained hereinabove , inclusive.

102. Defendant violated the Federal Truth-in-Lending Act 15 U.S.C 1601 et seq. (hereinafter "TILA").

103. No documents that are recorded to support the wrongful foreclosure reflect that any Defendant as the lawful lender and/or legal beneficiary with the power to enforce a lawful foreclosure.

104. See, *United States v. Detroit Timber & Lumber Co*., 200 U. S. 321, 337. The Fair Debt Collection Practices Act (FDCPA), 15 U. S. C. §1692 et seq., imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices. A debt collector who "fails to comply with any [FDCPA] provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and statutory "additional damages." §1692k(a). In addition, violations of the FDCPA are deemed unfair or deceptive acts or practices under the Federal Trade Commission Act (FTC Act), §41 et seq., which is enforced by the Federal Trade Commission (FTC). See §1692l. A debt collector who acts with "actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is [prohibited under the FDCPA]" is subject to civil penalties enforced by the FTC.

105. Defendants, and each of them, have filed documents Defendants knew or reasonably should have known to contained fraudulent information with the court and/or with the Alameda County Recorder's Office. Defendants appear at bar with unclean hands and documents they know or reasonably should have known to be fraudulent.

**SIXTH CAUSE OF ACTION:**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.**

106. Plaintiff refers to and incorporates herein as though fully set forth herein the allegations contained hereinabove, inclusive.

Karthik Subramani v. Wells Fargo Bank, N.A., et al.                    Verified Second Amended Complaint

107. California Business & Professions Code § 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

108. As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

109. Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, transfer and assignment of notes and deeds of trust, foreclosure of residential properties and related matters by

(a) Assessing improper or excessive late fees;

(b) Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

(c) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d) Misapplying or failing to apply customer payments;

(e) Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f) Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g) Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h) Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i) Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j) Ignoring grace periods;

(k) Executing and recording false and misleading documents; and

43

1   (l)  Acting as beneficiaries and trustees without the legal authority to do so.

2   110.  The Defendants fail to act in good faith as they claim fees for services but do not render

3   same services competently and in compliance with applicable law.

4   111.  Moreover, the Defendants engage in a uniform pattern and practice of unfair and overly-

5   aggressive servicing that result in the assessment of unwarranted and unfair fees against California

6   consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The

7   scheme implemented by the Defendants is designed to defraud California consumers and enrich the

8   Defendants.

9   112.  The foregoing acts and practices have caused substantial harm to California consumers.

10  As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the

11  Defendants, Plaintiff and California consumers have suffered and will continue to suffer damages in

12  the form of unfair and unwarranted late fees and other improper fees and charges.

13  113.  By reason of the foregoing, the Defendants have been unjustly enriched and should be

14  required to disgorge their illicit profits and/or make restitution to Plaintiff and other California

15  consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to

16  California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiff is

17  therefore entitled to injunctive relief and attorney's fees as available under California Business and

18  Professions Code § 17200 and related sections.

19  114.  Plaintiff alleges that Defendants' conduct is immoral, unethical, oppressive,

20  unscrupulous or substantially injurious to Plaintiff and requires this Court to weigh the utility of the

21  Defendants' conduct against the gravity of the harm to Plaintiff.

22  115.  Plaintiff and his family have suffered and are suffering and will continue to suffer injury

23  and financial ruin as a direct and proximate result of Defendants deceptive acts as alleged above.

24  Plaintiff is entitled under the Business and Professions Code § 17200 to equitable remedy of

25  restitution (i.e. disgorgement) of all money, property and benefits wrongfully obtained by

26  Defendants.

27  116.  The foregoing acts and omissions of Defendants affect trade and commerce as that term

28  is defined under the Unfair Practices Act ("UPA").

117. The UPA defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the UPA.

118. Beginning on the dates indicated and at all times relevant herein, Defendants and the DOE Defendants have committed acts of unfair competition proscribed by the UPA including the acts and practices against Plaintiff alleged herein.

119. Plaintiff and his family continue to suffer manifest injustice in these matters. Defendants continue in their acts in clear violation of both state and federal law.

120. Plaintiff properly alleges that Defendants completed an illegal Trustee's Sale of the Plaintiff's Property, and FNTC thereafter recording a Trustee's Deed Upon Sale ("TDUS") transferring the Property title to CALIFORNIA EQUITY MANAGEMENT GROUP, INC. who promptly dispossess Plaintiff of his real property and evicted Plaintiff and his family from their home.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against the Defendants and each of them as hereinafter set forth:

1.     For an order to rescind and set aside the trustee sale of the Subject Property and voiding the Trustee's Deed Upon Sale;

2.     For an order compelling said Defendants, and each of them, to undo the illegal foreclosure and transfer legal title and possession of the subject property back to Plaintiff herein;

3.     For an order or judgment that the Substitution of Trustee, the Default and Foreclosure Notices, and Trustee's Deed Upon Sale are each defective fraudulent documents and must be cancelled and removed from the public records in the Alameda County Recorder's Office as VOID documents and that necessary steps are taken to execute a full deed of reconveyance of the Deed of Trust in favor of Plaintiff;

4.     Plaintiff further requests the court to issue an Order for Defendants, and each of them, to remove and cure all reports based upon fraudulent documents Defendants made to all Credit Reporting Agencies which are derogatory to Plaintiff's credit standing.

5.      For a finding that Defendants, and each of them, have been unjustly enriched in an amount according to proof and that the same, with interest at the legal rate, shall be reimbursed to Plaintiff.

6.      For general, compensatory and special damages, including attorney's fees and costs according to proof; and

7.      For and all further relief as this court deems fair, just and proper.


DATED:  November 29, 2013                    Respectfully submitted,


                                             //s/Mark W. Lapham_____
                                              Mark W. Lapham
                                             Attorney for Plaintiff
                                              KARTHIK SUBRAMANI

## **VERIFICATION**

I, KARTHIK SUBRAMANI, declare as follows:

I am a Plaintiff in the above-entitled action. I have read the foregoing Second Amended Complaint and know the contents thereof; and that I believe that the matters stated therein are true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I hereby declare under penalty of perjury, that the foregoing is true and correct. This verification was executed at Livermore, California.

Dated: November 29, 2013

//s/Karthik Subramani_____
KARTHIK SUBRAMANI

Karthik Subramani v. Wells Fargo Bank, N.A., et al.          Verified Second Amended Complaint