**United States District Court**
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9   KARTHIK SUBRAMANI,                ) Case No. 13-cv-01605-SC
                                      )
10           Plaintiff,               ) ORDER GRANTING DEFENDANT'S
                                      ) MOTION FOR SUMMARY JUDGMENT
11      v.                            )
                                      )
12                                    )
    WELLS FAGO BANK, N.A.; and        )
13  FIDELITY NATIONAL TITLE COMPANY,  )
                                      )
14           Defendants.              )
                                      )
15                                    )
                                      )
16                                    )
                                      )
17  ──────────────────────────────── )
18
19   **I.  INTRODUCTION**
20        Now before the Court is Defendant Wells Fargo Bank, N.A.'s
21   ("Wells Fargo") motion for summary judgment.  The motion is fully
22   briefed,[1] and the Court deems it suitable for disposition without
23   oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons
24   set forth below, Defendant Wells Fargo's motion for summary
25   judgment is GRANTED.
26   ///
27   ──────────────────────
28   [1] ECF Nos. 68 ("Mot."), 76 ("Opp'n"), 80 ("Reply").

1    II.  **BACKGROUND**

2        A.   **Factual Background**

3        This is a mortgage foreclosure case.  Plaintiff Karthik

4    Subramani obtained a $479,600 mortgage loan (the "Loan") from

5    Defendant Wells Fargo on October 18, 2006, recorded by an

6    adjustable-rate promissory note and secured by a deed of trust

7    ("DOT") against residential real property in Livermore, California.

8    The DOT states that Plaintiff agreed to repay the borrowed $479,600

9    or risk foreclosure, and that "[t]he Note or a partial interest in

10   the note (together with this Security Instrument) can be sold one

11   or more times without prior notice to [Plaintiff]."  Wells Fargo

12   was the original lender under the DOT, and Fidelity National Title

13   Insurance Company ("FNTIC") was the original trustee.

14       Plaintiff alleges that Defendant first sold the Loan to Wells

15   Fargo Asset Securities Corporation ("WFASC") sometime around

16   October 24, 2006.  Soon after that, WFASC allegedly bundled

17   Plaintiff's Loan (consisting of the note and DOT) with other

18   mortgages into a mortgage-backed securities pool, the Wells Fargo

19   Mortgaged Backed Securities 2006-AR18 Trust, Mortgage Pass-Through

20   Certificates, Series 2006-AR18 (the "WFMBS 2006-AR18 Trust").  The

21   WFMBS 2006-ARIB Trust had been established on October 1, 2006 with

22   the execution of a pooling and servicing agreement ("PSA").

23       On July 23, 2009, Plaintiff received a notice of default

24   ("NOD") from First American Title Insurance Company acting as an

25   agent for First American Loanstar Trustee Services ("First American

26   Loanstar") as purported "Agent for the Current Beneficiary."

27   Compl. Ex. B ("NOD 1").

28       On August 25, 2009, First American Loanstar, acting as

**United States District Court**
For the Northern District of California

1  "attorney in fact for [Defendant]," issued a Substitution of

2  Trustee ("SOT 1"), substituting itself as trustee.

3       Plaintiff's first NOD was rescinded on September 10, 2010, but

4  Plaintiff defaulted again, and a second NOD was recorded on May 10,

5  2011.  The second NOD was issued on May 4, 2011, by LSI Title

6  Company acting as agent for Federal National Title Company

7  ("FNTC").  On May 6, 2011, between the issuance and recordation of

8  the second NOD, Defendant issued a second Substitution of Trustee

9  ("SOT 2") appointing FNTC as substitute trustee under the DOT.

10 Three months later, on August 11, 2011, the second SOT was

11 recorded.

12      Plaintiff did not cure his second default, and on August 11,

13 2011 -- the same day the second SOT was recorded -- FNTC, acting as

14 trustee under the DOT, issued and caused recording of the Notice of

15 Trustee Sale.  A year later, on August 9, 2012, FNTC sold

16 Plaintiff's Property in a foreclosure sale to non-party California

17 Equity Management Group, Inc., and issued the Trustee's Deed Upon

18 Sale ("TDUS") on August 15, 2012.  Plaintiff contends that all of

19 the legal documents described above were void because Defendant was

20 no longer the valid lender in the DOT, or even an agent of a

21 successor beneficiary, after it sold the Loan in 2006.  According

22 to Plaintiff, Defendant did not assign the DOT or endorse the note

23 pursuant to the PSA.  Nor did Defendant abide by California law

24 regarding the endorsement, assignment, and recordation of notes and

25 DOTs.  Plaintiff therefore states that after Defendant sold the

26 Loan, neither Defendant nor anyone else had any right to or

27 interest in the Loan, so all legal notices associated with the note

28 and DOT -- including the SOTs, NODs, and the foreclosure sale

1  itself -- are illegal and void.

2  **B.   Procedural History**

3  Plaintiff has twice amended his complaint, and Defendants have

4  twice moved to dismiss.  See ECF Nos. 24 ("FAC"), 25 ("MTD FAC"),

5  35 ("SAC"), 36 ("MTD SAC").  At this point, the Court has dismissed

6  with prejudice Plaintiff's claims for constructive fraud, violation

7  of the Truth in Lending Act ("TILA"), declaratory relief, and under

8  California Civil Code section 2934(a)(1)(A).  The Court also

9  dismissed with prejudice Plaintiff's claims under the unfair and

10 unlawful prongs of California's Unfair Competition Law ("UCL").

11 See ECF Nos. 33 ("MTD FAC Order"), 44 ("MTD SAC Order").

12 Four causes of action remain: Plaintiff's wrongful

13 foreclosure, cancellation of instruments, unjust enrichment, and

14 UCL fraud claims.  See MTD FAC Order at 18, MTD SAC Order at 8-9.

15 The wrongful foreclosure, cancellation of instruments, and unjust

16 enrichment claims are all premised on the argument that Wells Fargo

17 sold the Loan and has no interest through which it may foreclose on

18 Plaintiff's home.  See SAC ¶¶ 77-81, 95-97, 98-100.

19

20 **III. LEGAL STANDARD**

21 Entry of summary judgment is proper "if the movant shows that

22 there is no genuine dispute as to any material fact and the movant

23 is entitled to judgment as a matter of law."  Fed. R. Civ. P.

24 56(a).  Summary judgment should be granted if the evidence would

25 require a directed verdict for the moving party.  Anderson v.

26 Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "A moving party

27 without the ultimate burden of persuasion at trial -- usually, but

28 not always, a defendant -- has both the initial burden of

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

production and the ultimate burden of persuasion on a motion for summary judgment."   Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."   Id.   "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."   Id.   "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.   However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."   Id. at 252.

**IV.  DISCUSSION**

Plaintiff's claims all revolve around his assertion that Wells Fargo sold its interest in the Loan and therefore does not have standing to foreclose on the loan.  Plaintiff makes a brief, secondary argument that the foreclosure was invalid because the second NOD named FNTC as trustee, but FNTC was not substituted as trustee until months later.  The Court begins by discussing the substance of those allegations, determining that Plaintiff lacks evidence to support the first and that the second is insufficient to support any of his causes of action.  Then the Court assesses the effect of those holdings on each of Plaintiff's claims.

United States District Court
For the Northern District of California

A.   **Wells Fargo's Interest in the Loan**

It is undisputed that Plaintiff initially obtained the Loan from Wells Fargo in October 2006.  See SAC ¶ 10; ECF No. 69 ("RJN") Ex. A.  Plaintiff alleges that "shortly after loan closing . . . [Wells Fargo] irrevocably sold the Plaintiff's mortgage loan . . . to 'Depositor' WELLS FARGO ASSET SECURITIES CORPORATION."  SAC ¶ 14.

1.   **Evidence That Wells Fargo Retained its Interest in the Loan**

There are, however, a number of reasons to believe that Wells Fargo did not sell its interest in the Loan at that time.  In August of 2010, Plaintiff entered into a loan modification agreement with Wells Fargo.  ECF No. 70 ("Grewal Decl.") Ex. C ("Subramani Depo.") at 46:8-47:18.  Plaintiff claims that he entered into the modification agreement despite his belief that Wells Fargo was no longer the beneficiary of the DOT.  See Subramani Depo. at 47:6-48:19.  However, when Plaintiff filed a bankruptcy petition in December 2010, he listed Wells Fargo as the mortgagee on his home loan and certified that the information he provided was correct under penalty of perjury.  RJN Ex. D at 14, 24.

The deed of trust, both notices of default, the rescission of declaration of default, the substitution of trustee, and notice of trustee's sale all list Wells Fargo as the beneficiary.  See RJN Ex. A at 1, Ex. B at 2, Ex. C at 1, Ex. F at 2, Ex. G at 1, Ex. H at 1.[2]  Those documents cover a period from the initiation of the

─────────────────
[2] Plaintiff does not object to the Court taking judicial notice of these documents, but he does object to the Court's consideration of

United States District Court
For the Northern District of California

Loan in October 2006 through the trustee's sale in August of 2011, and all suggest that Wells Fargo was the beneficiary of the DOT throughout that period.  Wells Fargo was the only entity that ever attempted to foreclose on the loan and Plaintiff never made payments on the Loan to any other person.  Subramani Depo. at 49:4-22; Grewal Decl. Ex. A at 2.  Finally, Wells Fargo's Vice President of Loan Documentation has submitted a declaration stating that she has personal knowledge of Wells Fargo's records of Plaintiff's loan.  See ECF No. 71 ("Mulder Decl.") ¶¶ 1-3.  She states that Wells Fargo never transferred its beneficial interest in the loan nor sold Plaintiff's debt.  Id. ¶ 12.

Plaintiff's contention is that all of the documents Wells Fargo provides are fraudulent, and he attacks Ms. Mulder's declaration for being insufficiently detailed.  See Opp'n at 5-6. Neither of those contentions changes the fact that Wells Fargo has exceeded its burden (as a moving party that does not bear the burden of proof at trial) of production for this motion.  Wells Fargo has submitted significant evidence that it was the beneficiary of the DOT and mortgagee on the Loan throughout the relevant time period.  Absent some contradictory evidence, the Court must find that no genuine dispute of material fact exists as to whether Wells Fargo sold its interest in the loan.

the truth of the matters asserted therein.  Specifically, Plaintiff seems to be concerned that the Court will consider the truth of statements in these documents asserting that Wells Fargo was the true beneficiary of the DOT.  The Court does not consider the truth of those statements, but it does note that every publicly recorded document regarding the Loan lists Wells Fargo as the true beneficiary.  While that does not conclusively prove that Wells Fargo remained the true beneficiary at all times, it does evince a lack of any evidence that Wells Fargo ever sold or transferred its interest to someone else.

### 2.   Evidence that Wells Fargo Sold its Interest in the Loan

The only evidence Plaintiff offers in support of his claim that Wells Fargo transferred its beneficial interest is the expert opinion of Lawrence Asuncion.  Mr. Asuncion has a degree in economics and was a businessman for many years.  See Opp'n Ex. A ("Asuncion Rpt.") at 3-4.  He styles himself as a "forensic mortgage loan auditor," and he is now the Chief Forensic Securitization Audit and Mortgage Fraud Analyst for Certified Securitization Analysis.  Id.  Mr. Asuncion claims "over four thousand hours of research and study in the areas of the Truth in Lending Act ('TILA'), the Fair Debt Collection Practices Act ('FDCPA'), the Fair Credit Reporting Act ('FCRA'), Foreclosure Litigation, Asset-Backed Securitization and its effects and applications in Foreclosure and Loss Mitigation" during the past four years.  Asuncion Rpt. at 3.  Mr. Asuncion does not specify how his "research and study" was divided among the topics he lists, nor does he provide any indication of where his study occurred or whether it was supervised.  He has "completed and certified hundreds of Securitized Analysis Reports in residential real estate mortgage investigation" and claims familiarity with "industry standards, customs, practices and legal requirements of debt instruments and mortgage loan securitizations."  Id.  He lists no professional certifications or publications.  Mr. Asuncion offers an expert opinion that Wells Fargo sold the Loan to HSBC USA, National Association shortly after it was executed.  Asuncion Rpt. at 24, 28; ECF No. 79 ("Asuncion Decl.") ¶ 3.  According to Mr. Asuncion, Wells Fargo sold Plaintiff's loan as part of a

1  securitization process that pooled a large number of mortgages

2  together and transferred them to other entities.

3      Wells Fargo argues that Mr. Asuncion's opinion is

4  inadmissible.  Federal Rule of Evidence 702 permits an expert

5  qualified by knowledge, skill, experience, training, or education

6  to testify in the form of an opinion if (1) his scientific,

7  technical, or other knowledge will be helpful to the trier of fact;

8  (2) the testimony is based on sufficient facts or data; (3) the

9  testimony is the product of reliable principles and methods; and

10  (4) the expert has reliably applied the principles and methods to

11  the facts of the case.  The Supreme Court has established a two-

12  part test for determining the admissibility of expert testimony:

13  (1) the trial court must make a preliminary assessment of whether

14  the reasoning or methodology underlying the testimony is

15  scientifically valid and of whether that reasoning or methodology

16  properly can be applied to the facts in issue; and (2) the court

17  must ensure that the proposed expert testimony is relevant and will

18  serve to aid the trier of fact.  See United States v. Finley, 301

19  F.3d 1000, 1008 (9th Cir. 2002) (describing the two-part step

20  established in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579

21  (1993)).

22      Wells Fargo argues at the outset that Mr. Asuncion cannot be

23  qualified as an expert under Rule 702.  According to Wells Fargo,

24  Mr. Asuncion's 4,000 hours of research and study over the past four

25  years are insufficient to qualify him as an expert.  The Court is

26  inclined to agree; Mr. Asuncion's background does not demonstrate

27  expertise on any matter relevant to this case.  Indeed, the

28  undersigned has previously excluded Mr. Asuncion's opinion that a

United States District Court
For the Northern District of California

certain loan was securitized based on similar objections.  <u>See</u> ECF

Nos. 14-1, 27, <u>Santos v. Bank of America, N.A.</u>, No. 3:12-cv-01538-

SC (N.D. Cal. 2012).  In this case, however, the clearest basis for

excluding Mr. Asuncion's opinion is that it is neither based on

sufficient facts and data nor was it reached using reliable

methodology.

Mr. Asuncion's methodology, to the extent it is discernible

from his report (which is rather opaque), was apparently to search

through Wells Fargo's SEC filings related to a mortgage loan

purchase agreement from around the time the Loan was executed.  <u>See</u>

Asuncion Rpt. at 10-11, Ex. 1 at 80-94; Asuncion Decl. at 2.  Mr.

Asuncion claims to have "established a match within the range and

parameters of the 1,130 mortgage loans pooled under Loan Group I of

the securitization trust . . . ."  Asuncion Rpt. at 12.  Mr.

Asuncion never explains exactly what that means.  From his report

and attached exhibits, it appears that Mr. Asuncion examined the

SEC filings, which specify certain characteristics of the loans

bundled in the securitization.  For each characteristic, such as

the origination date of the loan, the purpose of the loan, the

interest rate, the maximum interest rate, the date to the first

adjustment, and the size of the loan, Mr. Asuncion found some

number of loans with the same characteristics as the Loan at issue

in this case.  In other words, Mr. Asuncion has found that, in

2006, Wells Fargo securitized some number of loans with similar

characteristics to the Loan at issue here.

There a number of rather obvious problems with this approach.

The first is that it does not necessarily tell us anything about

Plaintiff's loan at all.  The fact that Wells Fargo securitized a

number of loans, some of which shared certain characteristics with Plaintiff's, around the time that Plaintiff's loan was executed does not mean that Plaintiff's loan was securitized.  Second, it is unclear how Mr. Asuncion selected the certain loan pooling agreement he examined.  Third, Plaintiff provides no support whatsoever for his inference that Plaintiff's loan must have been one of the loans with similar characteristics that was included in the securitization agreement.  Plaintiff's search results themselves demonstrate that multiple loans match each of his search criteria.  Fourth, it is unclear from the report that Plaintiff's data permits him to determine whether multiple parameters apply to the same loan or loans.  For example, Mr. Asuncion's data appear to reveal that Group I included 45 loans with 360 months remaining to maturity, and 193 loans with original principal balances in the range of $450,001 to $500,000 (both of which "matched" Plaintiff's loan).  But Mr. Asuncion's report does not demonstrate whether or how he determined how many loans both had 360 months to maturity and an original principal balance in that range.  There is simply no explanation for his conclusion that Plaintiff's loans must have been one of the similar loans securitized in 2006.  In fact, from the data in the report alone, there does not appear to be any conclusive evidence that any of the loans included in the securitization agreement matched Plaintiff's loan for all parameters.  Even if Mr. Asuncion had such information, he never provides support for his assumption that one of the loans with matching parameters was Plaintiff's loan.

     The best way to phrase Mr. Asuncion's findings is this: he discovered that Wells Fargo securitized a large number of loans in

**United States District Court**
For the Northern District of California

2006, many of which shared certain characteristics with Plaintiff's loan. That fact simply does not support a conclusion that Wells Fargo securitized Plaintiff's loan, much less a conclusion that Wells Fargo sacrificed any beneficial interest in the Loan.

Accordingly, the Court SUSTAINS Wells Fargo's objection to Mr. Asuncion's opinion. The Court finds that Mr. Asuncion's opinion is neither reached through reliable methodology nor based on sufficient facts and data. Searching the records of a securitization agreement for loans with similar characteristics is not a reliable method of determining whether any particular given loan was sold as part of that agreement.[3]

### 3.   Conclusion

The Court finds that Wells Fargo has met both its burden of production and burden of persuasion on this issue. It is undisputed that Wells Fargo was the initial mortgagee, and Wells Fargo has provided sufficient evidence suggesting that it never transferred its beneficiary interest in the Loan. Plaintiff, who would bear the burden of proof at trial, has no evidence at all that Wells Fargo ever transferred the Loan. As a result, the Court finds that there is no genuine issue of material fact: Wells Fargo retained its beneficial interest in the Loan and DOT through the foreclosure sale.

### B.   Substitution of Trustee

Wells Fargo substituted Fidelity National Title Company

---

[3] That is not to say that such data <u>combined with other information</u> might support a conclusion like the one Mr. Asuncion offers. But standing alone, Mr. Asuncion's data is insufficient to support his conclusion. And "matching parameters," standing alone, is an unreliable methodology.

**United States District Court**
For the Northern District of California

("FNTC") as the trustee under the deed of trust (for First American LoanStar Trustee Services, LLC) on August 11, 2011.  <u>See</u> RJN Ex. G. However, the second notice of default was executed on May 4, 2011 (and recorded on May 10) and specified FNTC as the trustee. Plaintiff argues that, the second notice of default "is fraudulent, null and void" because it preceded the substitution of trustee. Opp'n at 13-14.  Plaintiff argues that the second notice of default was executed by, and the ensuing foreclosure sale was conducted by, a trustee that was not duly substituted.  <u>See</u> Opp'n at 9-10.

The California Court of Appeal has already addressed this issue.  In <u>Ram v. OneWest Bank, FSB</u>, the court faced a scenario in which a notice of default identified Aztec Foreclosure Corporation ("Aztec") as the trustee.  183 Cal. Rptr. 3d 638, 641 (Cal. Ct. App. 2015).  However, the beneficiary did not execute a substitution of trustee to name Aztec as the trustee until several weeks later.  <u>Id.</u>  The court held that the beneficiary had "complied with the procedure authorized by the Legislature" and that the "supposed defect" could not "form the basis for rendering the ensuing trustee's sale not just voidable, but absolutely void." <u>Id.</u> at 646.[4]

---

[4] Both Wells Fargo and the California Court of Appeal cite California Civil Code Section 2934a(c) as the basis for this conclusion.  <u>See Ram</u>, 183 Cal. Rptr. 3d at 645; Reply at 5.  All that section <u>says</u>, however, is that it is permissible for a beneficiary to effect substitution of a trustee after a notice of default is recorded but before a notice of sale is recorded, so long as the beneficiary provides proper notice of the substitution. The statute does not explicitly permit a beneficiary to name as trustee on a notice of default an entity that is not the trustee of record but will be substituted in the future.  That is, the statute never says that it is okay for a beneficiary to name the wrong trustee on a notice of default.  And it seems unlikely that California legislature intended to permit that when it passed the law.  Rather, the statute was probably passed to address

**United States District Court**
For the Northern District of California

1    Moreover, the <u>Ram</u> court made clear that even if prematurely

2    naming an incorrect trustee did constitute a procedural

3    irregularity, it would be unlikely to cause prejudice.  "The

4    primary purpose of a notice of default is to provide notice of the

5    amount in arrears and an opportunity to cure the default.  In order

6    for a defect in the notice of default to be material, it must cause

7    prejudice."  <u>Id.</u> at 649 (internal citations omitted).  Plaintiff

8    has not identified any reason that naming FNTC as the trustee

9    before FNTC was duly substituted as the trustee caused him any

10   prejudice at all.  <u>Ram</u> is directly on point: the fact that FNTC was

11   not substituted as trustee until after the notice of default was

12   recorded cannot serve as basis for Mr. Subramani's challenge to the

13   foreclosure.  "[T]he recorded substitution of trustee constituted

14   conclusive evidence that [FNTC] had the authority to conduct the

15   trustee's sale and to convey title to [Mr. Subramani's] home to the

16   highest bidder, even if the notice of default was improperly signed

17   and recorded by [FNTC] before it became trustee."  <u>See id.</u> at 647.

18       C.   **<u>Mr. Subramani's Claims</u>**

19            1.   **<u>Wrongful Foreclosure</u>**

20   The elements or a wrongful foreclosure claim are: "(1) the

21   trustee or mortgagee caused an illegal, fraudulent, or willfully

22   oppressive sale of real property pursuant to a power of sale in a

23   mortgage or deed of trust; (2) the party attacking the sale . . .

24

25   specifically the situation it describes: substitution of a trustee
     after a notice of default issues (presumably specifying the correct
26   trustee of record at the time) but before recording a notice of
     sale.  This difference of opinion regarding the interpretation of
27   Section 2934a, however, does not affect the outcome in this case
     because Mr. Subramani cannot show that he was prejudiced by Wells
28   Fargo's failure to name the correct trustee of record.

United States District Court
For the Northern District of California

1  was prejudiced or harmed; and (3) in cases where the trustor or

2  mortgagor challenges the sale, the trustor or mortgagor tendered

3  the amount of the secured indebtedness or was excused from

4  tendering." Lona v. Citibank, N.A., 134 Cal. Rptr. 3d 622, 633

5  (Cal. Ct. App. 2011).  Plaintiff alleges that the foreclosure sale

6  in this case was illegal and fraudulent because Wells Fargo lacked

7  the authority to foreclose on the property.  According to

8  Plaintiff, Wells Fargo's lack of authority stems from the alleged

9  transfer of its beneficial interest in the Loan to a "true unknown

10 beneficiary."  See SAC ¶¶ 77-81.  Because the Court finds that

11 there is no evidence that Wells Fargo ever transferred its

12 beneficial interest in the Loan, Plaintiff has no evidence of the

13 first element of this claim.  Thus, there is no genuine dispute of

14 material fact as to whether the foreclosure was illegal,

15 fraudulent, or willfully oppressive.  Wells Fargo's motion is

16 GRANTED as to the wrongful foreclosure claim.

17           **2.   Cancellation of Instruments**

18      California Civil Code Section 3412 permits cancellation of

19 "[a] written instrument, in respect to which there is a reasonable

20 apprehension that if left outstanding it may cause serious injury

21 to a person against whom it is void or voidable."  Once again, this

22 claim is premised on Plaintiff's assumption that Wells Fargo

23 transferred its beneficial interest in the Loan.  See SAC ¶¶ 95-96.

24 Plaintiff's legal theory is that the deed of trust and foreclosure

25 documents are void "as a result of the bungled securitization and

26 the Defendants acting without any legal standing and authority from

27 the unknown beneficiary . . . ."  Id. ¶ 95.  Because Plaintiff has

28 no evidence that the "bungled securitization" ever occurred, he

15

1   cannot show that a genuine dispute as to a material fact exists.

2   This claim, too, must fail.  Wells Fargo's motion for summary

3   judgment is GRANTED as to the cancellation of instruments cause of

4   action.

5           **3.   Unjust Enrichment**

6        "The elements of an unjust enrichment claim are the 'receipt

7   of a benefit and [the] unjust retention of the benefit at the

8   expense of another.'"  Peterson v. Cellco P'ship, 164 Cal. App. 4th

9   1583, 1593 (Cal. Ct. App. 2008).  Plaintiff alleges that Wells

10  Fargo unjustly retained his mortgage payments.  The basis for that

11  claim is, again, that Wells Fargo "collected mortgage payments from

12  the Plaintiff for years after it sold the loan."  Opp'n at 14.

13  Because there is no evidence that Wells Fargo ever sold the Loan,

14  Wells Fargo's motion for summary judgment is GRANTED as to this

15  claim as well.

16          **4.   UCL Fraud**

17       Plaintiff's UCL fraud claim includes a litany of Defendants'

18  allegedly fraudulent practices.  See id. ¶ 109.  Strangely, the

19  operative complaint alleges that Wells Fargo perpetrated these

20  fraudulent practices, causing "substantial harm to California

21  consumers."  Id. ¶ 112.  It is, therefore, unclear whether

22  Plaintiff alleges that Wells Fargo perpetrated all of these

23  practices against him.  Many of the claims are not adequately

24  supported by factual allegations in the complaint.  It is clear

25  that, at least to some extent, Plaintiff's UCL claim is based on

26  the same alleged sale of the Loan as his other claims.  Some of the

27  behavior he cites includes "[e]xecuting and recording false and

28  misleading documents; and . . . [a]cting as beneficiaries and

trustees without the legal authority to do so." Id. ¶ 109.  In his opposition brief, Plaintiff clarifies that "[t]he basis of Plaintiff's claim is that Wells Fargo fraudulently continues to assert rights under Plaintiff's note and deed of trust notwithstanding the fact that it sold the mortgage loan in 2006." Opp'n at 14-15.  Because that is the basis of Plaintiff's UCL claim, and because the Court has determined that Plaintiff has no evidence that the Loan was sold in 2006, the Court finds that summary judgment is warranted on this claim as well.  Wells Fargo's motion is GRANTED as to Plaintiff's UCL claim.

## V.  CONCLUSION

For the reasons set forth above, Defendant Wells Fargo's motion for summary judgment is GRANTED with respect to all of Plaintiff Karthik Subramani's remaining causes of action.


IT IS SO ORDERED.


Dated: March 13, 2015                    _____

                                         UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California